GEORGE FORSYTH *versus* ADONIRAM J. DAY *& al.*

Where one defends a suit upon a note to which his name has been affixed by a third person, if it appear that the defendant had given such third person authority to make notes, and put thereon his name as a party thereto, and to put notes thus executed into general circulation, as bearing his genuine signature, and had not, at the date of the note in suit, revoked such authority, and the agent, acting under such authority, executed the note in suit and passed it to the plaintiff, as bearing the genuine signature of the defendant, and it was received by the plaintiff as such, the defendant will be bound thereby.

Such authority is *express*, when directly conferred on the agent, by the principal, either verbally or in writing; and *implied,* when it arises from facts and circumstances, admitted or proved, which cannot be explained upon any other supposition, than that of authority; and from which the existence of authority may reasonably be inferred.

Other notes, which had been previously executed in the same manner, which had been shown or described to the defendant, before the date of the note in suit, and which he had acknowledged to be valid, are admissible in evidence, as bearing on the question of authority on the part of the agent; and, also, as indicating the degree of confidence which had been reposed in him on the part of the defendant.

And proof that the plaintiff took the note in suit, as having thereon the signature of the defendant, executed by *himself,* and did not suppose it had

been placed there by any other person for him, will not render such notes inadmissible in evidence.

There may be a ratification and an adoption of a forged note, by the person whose act it purports to be, although he has derived no benefit therefrom ; and such ratification binds him from the date of the note. But the language or acts relied on, to establish such ratification, must be such as indicate his *intention* to be holden to pay the note.

Where such a note has been presented to the apparent maker of it for payment, who did not repudiate it, but deceived its holder by language and acts calculated to induce a reasonable belief that the note was genuine, although, thereby, he may not be regarded as *adopting* the note as his own, still, he will be *estopped* from denying his liability thereon, if the holder, acting upon the belief thus created, has suffered damage, or neglected to enforce any remedy he might have had against any other party.

Where one had given his own note, and placed thereto the name of another person as a joint promisor, who defended a suit against him, brought upon the note, on the ground that his name was put thereon without authority, evidence is admissible which tends to show that the defendant, after he had knowledge of the existence of the note, took from the party who had signed his name, security against general liabilities.

ON EXCEPTIONS from *Nisi Prius ;* — also, on MOTION to set aside the verdict as being against law and the evidence.

This case having been sent to a new trial, [see *Forsyth* v. *Day,* 41 Maine, 382,] was again tried at May Term, 1858, RICE, J., presiding.

The action is *assumpsit,* on a promissory note of which the following is a copy :—

" $270.                    " Damariscotta, October 16, 1854.

" Four months after date, I promise to pay to the order of George Forsyth two hundred and seventy dollars, value received, at either bank in Boston.

(Signed)                    " Adoniram J. Day."

The name of Daniel Day is signed in blank on the back of the note.

A. J. Day had been defaulted. Daniel Day, alone, defended, and made affidavit, (as a rule of Court requires,) denying that the signature, purporting to be his, was genuine, or that he authorized any one to sign it for him.

There was a full report of the evidence introduced at the trial, from which it appeared that *John H. Converse* testified,

in substance, that, as plaintiff's attorney, he instituted this suit; that he received the note from plaintiff early in the month of March, 1855, and soon after that time, at his office, communicated to the defendant, that the note had been sent to him for collection. The note was exhibited to him; he took it in his hand and remarked that he had received nó notice of its having been protested. Defendant was informed what the plaintiff's instructions were, if the note was not paid. He remarked that he did not want to be sued; that the note belonged to Adoniram to pay, and he was expecting to receive funds from him, (Adoniram was then in Florida,) and, if he received the funds, he would pay the note. Defendant, also, stated to witness that he expected Adoniram would be at home soon, and, when he came, the note would be paid. He declined to give a new note.

Witness further testified he had no recollection that defendant ever intimated to him that the note was not genuine; did not, in terms, say it was, or that it was not. Adoniram arrived at Damariscotta, from Florida, about the 1st of July, 1855. At the time of his receiving the note, witness thinks he was not acquainted with defendant's signature.

*On cross-examination.* Now knows defendant's signature. His name on the note in suit, does not resemble his handwriting. Supposed it defendant's genuine signature at the time he received the note; treated it as defendant's autograph while acting on the instructions he received from plaintiff, and he and his client in their correspondence treated it as such.

*Thaddeus Weeks,* called by plaintiff, testified, substantially, that he had a note purporting to be signed by Adoniram J. Day and Daniel Day, for $475, which is dated Sept. 1, 1852, payable in four months, with interest. *That* he went with A. J. Day, from his store to the counting room of Daniel Day, which was eight or ten rods distant, for the purpose of obtaining Daniel's signature to it. Daniel and Adoniram went into the counting room, witness thinks he did not go in, but that Adoniram delivered the note to him immediately on com-

ing out of the counting room; *that* Daniel was not present when he received the note. Were at the counting room but a short time.

Soon after the note became due, witness called on Daniel for payment; does not recollect that he showed him the note. Requested Daniel to pay it more than once. Thinks Daniel told him, at one time, that Adoniram would be at home soon, or send home money to pay it.

*On cross-examination*, witness stated that he had had several notes against Adoniram and Daniel. Defendant's counsel exhibited one for $672, dated May 16, 1851, payable to T. Weeks, in one year, and witness testified that he once held it; thinks he left it at Waldoboro' Bank for collection, and that it was paid at its maturity. Could not say that Daniel did not suppose that this was the note witness referred to, in the autum of 1853, when he requested of defendant payment of the note he held. Thinks the note of $672 has the genuine signature of Daniel Day.

The testimony of this witness was seasonably objected to by the counsel of defendant, but admitted by the Court. And the plaintiff was allowed to put into the case the note of $475, against the objection of the defendant's counsel.

*Robert Kennedy*, for plaintiff, testified that his son, Thomas C. Kennedy, before he went to the west to reside, left with witness a note (which was exhibited) for $416, payable to said Thomas, in one year, purporting to be signed by A. J. Day and Daniel Day, and by Joseph Day, now deceased. That the note is still the property of said Thomas; that he (witness) presented it to Daniel Day in October, 1854; cannot fix the day, but it was not after the middle of that month. Defendant took the note, looked at it, and said "it is good and we will pay it soon." This was at Damariscotta, in the street. Witness told Daniel he had not come to dun him, but to notify him and the administrator on Joseph Day's estate, that the note was not paid, as Adoniram had told him he was going to the South.

Witness further testified, that he next presented the note

to Daniel in July, 1855, after he had heard there was forged paper. Daniel took the note, examined it, and said he thought he did not sign it.

The testimony of Kennedy was seasonably objected to, but the Court admitted it. The substance, only, of the testimony on the direct examination is here given. Against the defendant's objection, the Court also allowed the Kennedy note to be read in evidence.

*George Forsyth,* (plaintiff,) called by his counsel, testified, that the note in suit was given him for furniture for the tavern-house, which A. J. Day was building in Jacksonville, Florida. A. J. Day came to his place of business in Boston, with a gentleman from Damariscotta, by whom he was introduced to plaintiff, and selected the furniture to be sent to Florida. He was to send his note with Daniel Day's name upon it. Received the note by mail, about the time of its date. Left the note at a Bank in Boston for collection; notice of non-payment was given to witness, which notice he sent by mail to Daniel Day; and, a day or two afterwards, wrote him, but received no reply.

There was other testimony in the case, but further reference to it is not deemed necessary to an understanding of the case.

Defendant's counsel objected to reading in evidence the note declared on, but their objection was overruled by the Court.

The plaintiff offered a disclosure of Daniel Day, as the trustee of A. J. Day, signed and sworn to by him, in January, 1856, in the suit, *Cotton* v. *A. J. Day & Daniel Day, trustee,* which was objected to by defendant. The Court ruled that so much of the disclosure as related to the taking of security by Daniel Day from A. J. Day for general liabilities, was admissible, and so much of it was read in evidence.

The plaintiff contended that it was competent for the jury to *infer* authority from Daniel to Adoniram to sign the note in suit, from the facts proved in relation to the Weeks and Kennedy notes.

The defendant contended that, inasmuch as the plaintiff did not take the note as one executed by an agent, but as a *genuine* autograph of Daniel Day, the testimony in relation to those notes could not have the effect claimed by plaintiff.

The defendant requested the Court to instruct the jury: —

1. That it is incumbent upon the plaintiff to satisfy the jury that the note was either signed by Daniel Day or by *some agent for him,* and that the fact is not to be *presumed,* but the plaintiff must *prove it.*

2. That, upon the testimony in this case produced by the plaintiff, the jury are not authorized to find that it is the *genuine signature* of Daniel Day.

3. That there is no testimony in the case, which authorizes the jury to find that Adoniram put Daniel's name upon the note.

4. That there is not testimony in the case sufficient to show that Daniel had authorized Adoniram to put his name on this note.

5. That there is no testimony in the case to authorize the jury to find that, prior to the date of the note in suit, Daniel had authorized Adoniram to sign his name to notes and put them in general circulation.

6. That the proof in this case does not authorize the jury to find the adoption by Daniel of his signature put by Adoniram on this note, even if Adoniram did place it there.

7. That there is no evidence, to authorize the jury to infer authority by Daniel to Adoniram, to sign his name to the note in suit.

8. That there is not sufficient evidence in the case, to authorize the jury to find that Daniel adopted the signature on this note as his own.

9. That there is not sufficient testimony in the case, to authorize the jury to find that Daniel ratified the signature on this note, purporting to be his.

10. That if plaintiff took the note as the genuine note of Daniel, signed by his own hand, and did not suppose that it was signed by Adoniram, or any one else for him, the testi-

mony relating to the Kennedy and Weeks notes cannot affect his (Daniel's) liability in this case.

11. If the defendant did not sign this note, nor authorize any one else to sign his name, and if it was not executed to be used in Daniel's business, and was not so used, and he had no benefit therefrom, Daniel is not liable upon it, even though the jury be satisfied that he did not inform Mr. Converse that his signature was not genuine, when the note was presented to him after it became due; that such a concealment of the fact that his name had been forged, will not render the defendant liable in this action.

In relation to this request, the jury were instructed that it was a question for them to determine, whether the defendant did or did not adopt or ratify his signature upon the note; that the testimony of Converse, as to what occurred on the presentation of the note to him, was to be considered with the other testimony in the case bearing upon that point.

The first request was given. The requested instructions from 2 to 10, (both inclusive,) were refused.

The jury were instructed that if the defendant, Daniel Day, had given Adoniram J. Day authority to make notes and put thereon his (Daniel's) name, as a party thereto, and to put notes thus executed into general circulation as bearing his (Daniel's) genuine signature, and had not, at the date of the note in suit, revoked such authority, and Adoniram, acting upon such authority, executed said note and passed it to the plaintiff as the note of Daniel, bearing his genuine signature, and it was received by the plaintiff as such, Daniel would be bound thereby.

*Or,* if Daniel, after he had knowledge that his name had been put upon the note in suit, as a maker, ratified and adopted the same, he would be bound thereby, although his name was originally placed upon said note without authority.

That if the jury shall find that Daniel Day, when the note was presented to him by Converse, for the purpose of giving him to understand that his (Daniel's) signature thereon was genuine, used language or conduct calculated to induce such

belief, and Converse was thereby actually induced to believe the signature genuine, it would constitute an adoption thereof, though the real intention of Daniel was only to gain time for the purpose of making some arrangement to avoid the exposure of the criminal conduct of his brother, and did not intend to adopt the signature as his own.

*W. Hubbard*, for plaintiff.

The first requested instruction was given. The refusal to give the eight following requests affords the defendant no cause for exceptions.

We are then brought to the consideration of the requested instruction numbered *ten*, which was, " if the plaintiff took the note as the genuine note of Daniel Day, signed by his own hand, and did not suppose that it was signed by Adoniram, or any one else for him, the testimony relating to the Kennedy and Weeks notes cannot affect his, Daniel's, liability in this case."

That is, if the plaintiff received the note as having the genuine signature of Daniel Day, he cannot establish Daniel Day's liability by proof that his name was subscribed *by an authorized agent.*

When this objection is carefully examined, there will be found nothing in it. *There is no such issue* between the parties. The issue is, only, whether Daniel Day promised to pay this note; did he become legally liable to pay it ? There is no issue to be tried, whether the plaintiff was or was not correct in thinking he was liable on some particular ground, as that he made the signature with his own hand. All such considerations are irrelative. If the jury should find a verdict upon any such basis, the issue would not be determined. The Court might properly have disregarded the request, but the instruction given in relation to it is not liable to any just complaint.

The plaintiff was at full liberty to prove, either that Daniel Day subscribed the note with his own hand,—or, that he authorized A. J. Day to subscribe it for him, — or, that A. J.

Day did it without authority, and that Daniel ratified the act. Whether the plaintiff received it as executed in one of these or either of these ways, is of no consequence; *it is not matter in issue*, and does not affect the rights of the parties or the question in issue, which *only* is, whether Daniel Day did or did not promise, — whether he had become legally liable to pay the note.

The testimony to show that D. Day treated other notes, signed as this was, as genuine and obligatory contracts on him, is legitimate, as competent and proper evidence to prove that he had authorized A. J. Day to sign his name to this note. Story's Agency, (3d ed.) § § 54, 55 and 56.

As to liability by ratification, see *ib.* § 244, and cases cited in notes to it; also § § 253, 255, 443, 445.

In the opinion of this Court, when this case was previously considered, (41 Maine, 395,) it is said: —

"To hold a party responsible for drawing, &c., on an *implied authority*, it must be made to appear that the party had knowledge antecedent to, or concurrent with," the making of the contract, "that his name was being thus used by such *assumed agent*, and that he permitted it to be done; and, further, that injury has arisen in consequence of such permission to the moving party."

This is liable to misconception unless closely examined.

It may be, or not, correct, where authority *is to be implied* by permitting another to hold himself out as having authority. But it is not to be applied to a case, in which, *not an implied*, but an *actual authority* is to be proved, by showing that repeated acts of a similar kind have been treated *precisely as they would have been if the agent had actual authority*.

In such case, an actual authority is proved by conduct not to be explained upon any other supposition.

As to the adoption or ratification of the note, the *whole charge* as presented by the exceptions should be considered; and from the whole the jury could not have misapprehended their duty.

*A. P. Gould,* for the defendant.

There are a large number of suits now pending against the defendant, involving many thousands of dollars, all of which must depend, more or less, upon the principles settled in this case.

When Daniel saw the first forgery of his name by his brother, ignorant that there was another, he did not at once denounce him to the world as a *forger;* but, thinking that something might be done to cover his shame and to ward off the disgrace which must come upon the whole family, he was simply *silent* for a time. From this *silence,* a jury are now told, that they are authorized to *infer knowledge* on the part of Daniel, that Adoniram was using his name at that time; and, from the knowledge proved in *one prior instance,* they are authorized to infer an authority to sign Daniel's name to this note. Such is exactly one phase of this case; for knowledge of the existence of the *Kennedy note alone,* was proved.

If this *one instance,* and that of a *doubtful* character, is sufficient to authorize a jury to infer *general* authority, for this case, it may also be sufficient upon which to base future verdicts in other cases, where there is no *pretence of adoption* or subsequent ratification, as these can only take place where the particular note in suit is brought to the knowledge of Daniel; and we are settling principles, not for *this* case only, but for *many.*

The idea that the silence of Daniel, when the note in suit was presented to him, may be regarded by a jury as an *adoption* of his name upon it, though he did not *intend* it, also seems erroneous to us.

There was no question of *fraud* in this case, as the plaintiff does not show that he was *misled* by Daniel's silence, or that he lost any opportunity to collect, or was induced to delay any *remedy* which he would otherwise have pursued. But, on the contrary, Daniel declining either to pay the note or to give a *new* one, and informing plaintiff's attorney that it belonged to Adoniram to pay, the plaintiff at once put it in suit. Hence it is, that we find that counsel, in their posi-

tions to the jury, and in their *requests*, and the Judge in his
charge, treated this as a case of *contract*, either of *previous
authority* or subequent *adoption*, both of which rest in *contract*,
demanding the usual *elements* of contract, the *consenting mind.*

There are some facts in this case, *undisputed*, necessary to
be constantly borne in mind, in order that we may justly ap-
preciate the principles and authorities relied upon, to make
out a case.

Adoniram was *never* in Daniel's *employ*, never acted as
Daniel's agent in *his* business.   Neither the note in suit, or
*any other* note introduced, about which there was any testi-
mony, was made *to be* used, or *was* used for Daniel's benefit.
There is no act of Adoniram proved which he *assumed to do*
in *behalf* of Daniel.   Are we not, then, destitute of the foun-
dation upon which a subsequent adoption or ratification must
rest ?

*Adoption* can only take place where some act has been done
by *another, professedly* in *behalf* of the person sought to be
charged.   The term *" agency"* implies an act done *for* or in
*behalf* of another.

If an act is done solely on account and for the benefit of
the person *acting;* there is nothing for another to *adopt.*   It
is only the act done for the *principal*, which can be adopted
by the *principal*, as his own.   So, ratification can only take
place, where some act has been done for the party *ratifying.*

There are two principal grounds on which the defendant is
sought to be charged.

One was, that previous authority might be *inferred* from
what was proved in relation to the Weeks and Kennedy
notes.   The other was, that the conduct of Daniel, when Mr.
Converse presented the note to him, amounted to an *adoption*
of it.   The Court authorized the jury to find for the plaintiff,
on *either* ground, and we do not know which they adopted.
If either, then, was erroneous, a new trial must be granted.
I shall present, what I contend to be errors in the admission
of testimony, and errors in the rulings to the jury together,
for convenience.

*First.* — The plaintiff was not *deceived* by the previous recognition of Adoniram's right to use Daniel's name, but supposed, when he took the note, that it was signed by Daniel's own hand. If the plaintiff could prove that Daniel had recognized notes signed by Adoniram, before the date of the one in suit, it would not aid him, unless he could also show, that he took the note on the faith of that authority, which might be *implied* from the former use of his name. *St. John* v. *Redman*, 9 Porter, 428.

Forsyth did not "give credit to Adoniram in the capacity of *agent.*" 2 Kent's Com. 614, (786, 7th ed.) ; *vide* 41 Maine, 394.

If the plaintiff had taken this note, knowing that it was not Daniel's autograph, but that his name had been put there by Adoniram, and believing that he had authority to sign Daniel's name, it would have been competent for him to prove previous instances of the use of it, with Daniel's consent, and that those instances had come to the knowledge of the plaintiff before taking this note, and that such use induced the belief, in his mind, that Adoniram had general authority to sign Daniel's name. It is a fraud ·to thus hold another out as agent, who is not in fact such, because it induces a *false* belief or credit. But only those who have been defrauded by such conduct can take advantage of it.

All the books, in which it is held that agency may be *presumed,* from repeated acts of the agent, with the knowledge of the principal, prior to the one in question, put it upon the ground, that it is a *fraud* to lie by and see another use one's name, without authority, to the prejudice of innocent parties. But, that if any one would avail himself of such silence, he must show that he has been *injured* by it. This Court, in the former opinion (p. 395,) recognize this principle :— " To hold (defendant) responsible on an *implied original authority,* it must be made to appear that he had knowledge antecedent to, or concurrent with, the inception of the note, that his name was being used by Adoniram, (in other instances,) and that he *permitted* it to be done. And, further, that injury has

arisen in consequence of such *permission* to the moving party," (the plaintiff.)    This is in substance what the Court say.

Not, that injury has arisen to the plaintiff, on account of the use of Daniel's name on *this* note, but on account of the use of his name in *other* instances; that is the thing necessary for the plaintiff to show, before he can avail himself of the proof of those other instances.

Not, that plaintiff is to be deprived of the privilege of showing, if he can, that Daniel authorized his name to be put on the note in suit, but he is not entitled to this species of proof, because he is not in a situation to avail himself of it. What *tittle* of testimony is there to show, in the language of this Court, "that injury has arisen to him in consequence of such permission," by the defendant, of the use of his name, in other instances.

This point was not brought out in the former argument, because the facts then proved, did not present it.   It was never made to appear, until the last trial, that Forsyth took the note, *believing* it to be Daniel's genuine signature, and, upon this fact coming out, defendant's counsel, at once took the position, that the evidence relating to other notes, from which authority to sign this one was to be implied, was not admissible.   It is an important point and applicable to all the other cases.

Counsel commented upon the case of *Brigham* v. *Peters,* 1 Gray, 139, contending that the principles there decided were not applicable to this case.

*Second.*—But if the plaintiff was in a situation to avail himself of the fact "that the defendant had given Adoniram authority to make notes and put thereon his, Daniels, name, as a party thereto, and put notes thus executed in general circulation," as the Judge charged, there is no proof of such fact.   And, even if proved, it is not sufficient.   It should appear that this had been done in Daniel's business.

The testimony of Weeks and his note dated September 1, 1852, for $475, were illegally admitted.   (1.) It does not appear that Adoniram wrote Daniel's name upon it.   (2.) The

note was not shown to defendant, nor so described that he knew to what note the witness referred.

The first objection is also applicable to the Kennedy note. Besides, it does not sufficiently appear that the existence of this note was known to defendant before the date of the note in suit.

*Third.* — There was no adoption of the note in suit by the defendant.

" The various acts and declarations which go to constitute adoption, are inferior evidences of a promise." PARKER, C. J., in *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1, 29, and this is followed by a remark indicating that nothing short of evidence equivalent to an express promise, will amount to an adoption of an unauthorized act.

This was not an act that was capable of adoption. But the conduct of the defendant, when the note in suit was presented to him, cannot in any way be treated as evidence of a promise. *Amory* v. *Hamilton*, 17 Mass. 109; 1 Am. Leading Cases, (3d ed.) p. 572; *Hall* v. *Huse*, 10 Mass. 39; *Hortons* v. *Townes*, 6 Leigh, 47; *Union Bank* v. *Beirne*, 1 Grattan, 226; *Wyman* v. *Hallowell Bank*, 14 Mass. 58; 2 Kent's Com. 787, (7th ed.)

Proof of adoption is only one mode of proving a contract. The jury were instructed, that if defendant, when the note was presented to him by the plaintiff's attorney, for the purpose of giving him to understand that the note was genuine, used language or conduct calculated to induce such belief, and the attorney was thereby induced to believe his signature genuine, " it would constitute an adoption of it," * * "although he did not intend to adopt the signature as his own." Thus making a contract without intending to do so — without having a " consenting mind."

The question is not, whether his conduct was *fraudulent*, and whether, by his fraud, he is estopped to deny his signature. This question might arise, if one thing more was assumed, viz. : — that the plaintiff was induced by such language to believe the signature genuine, and so took the note upon

the faith of it, or did some other act, or neglected something, which was seriously *injurious* to him in consequence.

The jury were authorized to find an *adoption*, if the language was calculated to induce the belief of genuineness, and *did* induce it, not in the mind of the plaintiff, but of his attorney, whether the plaintiff was *injured* by that belief or not. It was put upon the ground, that it made Daniel a party to the *contract*.

*Fourth.*—The trustee's disclosure should not have been admitted, not even for the purpose suggested by the Court. Even if defendant had taken security for this note, such fact would not have authorized the inference that it was genuine, or that authority had been given to sign it, as defendant might well have taken an indemnity against a contingent liability, or a possible one.    *Hortons* v. *Townes*, 6 Leigh, 47.

But the purpose, permitted by the Judge, was still more mischievous.

In his answer to the 35th question, the defendant said, that he took a deed of the Judson House, and gave back a bond, that when Adoniram paid what was due, (on certain specified liabilities,) " and saved me harmless from all other liabilities which might arise, I would reconvey to him." This is what is meant by " taking security for general liabilities," in the ruling of the Judge.

The question at issue was, " Is the defendant liable on the note in suit?" This testimony was admitted as the basis of an inference that the note in suit was a " liability!"

What tendency can proof of taking security for general liabilities have, to show the existence of a particular liability, not mentioned in the security?

General liabilities, are legal liabilities dependent upon their own character; and the security taken could only cover such.

When that deed was given, this note was either the note of the defendant, or it was not; and if not, taking the deed could not operate to make it such. It could not be regarded as an adoption of it, without specifying it, and that even would not, upon the authority cited.

The opinion of the Court was drawn up by

MAY, J.—This case, being the same which was once before presented to this Court, as appears in the Maine Reports, vol. 41, p. 382, comes before us again upon exceptions taken to the rulings of the presiding Judge at the last trial; and also upon a motion to set aside the verdict as against the weight of evidence. It is apparent, from the whole evidence as now presented, that Daniel Day, the only excepting defendant, if he can be held liable upon the note in suit, must be so held either upon the ground that he authorized his signature to be placed upon it as a joint promisor with Adoniram J. Day; or that the same, having been placed there without any previous authority, he, in some way, subsequently ratified or adopted it as his own; or because he is somehow estopped by his words or conduct from denying the genuineness of his signature thereon.

In relation to the question of previous authority, the jury were instructed " that if the defendant, Daniel Day, had given Adoniram J. Day authority to make notes and put thereon his (Daniel's) name, as a party thereto, and to put notes thus executed into general circulation, as bearing his (Daniel's) genuine signature, and had not, at the date of the note in suit, revoked such authority, and Adoniram, acting upon such authority, executed said note and passed it to the plaintiff as the note of Daniel, bearing his genuine signature, and it was received by the plaintiff as such, Daniel would be bound thereby."

That this instruction is sufficiently guarded to protect the rights of the excepting defendant, and in harmony with law and justice, there can be no doubt. It is simply an enunciation of the common maxim, *qui facit per alium, facit per se ;* than which, as a general proposition, there is no rule, either in law or morals, better established.

A more important question is, whether the case discloses sufficient evidence to lay a basis for, or to require the instruction given.

The authority to which the instruction relates, may be ex-

press or implied. It is express when directly conferred by the principal to the agent, either verbally or in writing; and implied when it arises from facts and circumstances, admitted or proved, which are inconsistent, upon the ordinary principles of human action, with any other theory than that of such authority, and from which its existence may reasonably be inferred.

It is not contended, on the part of the plaintiff, that there is any direct proof of such express authority. The argument is, that, from the facts which are proved, the jury were well authorized to find, that the signature of Daniel Day was placed upon the note by Adoniram, and the note put into circulation by him, with Daniel's permission; and that such permission was fairly to be implied, from the acts and conduct of Daniel, with reference to other notes of the same character, previously put into circulation, and from his acts and conduct with reference to the note in suit.

The note in suit is dated October 16, 1854, and there is testimony tending to show that, in the year 1852, one or two notes, if not more, were put into circulation by Adoniram with the signature of Daniel thereon, and, that these notes were either shown or described to him, and he admitted they were right, although, subsequently, he seems to have denied the genuineness of his signature thereon. To the admissibility of these notes, and the testimony thereto relating, the defendant objected, but they were admitted by the presiding Judge, and, we think, rightfully. It certainly was proper that the jury should know something of the dealings and relationship between these defendants, prior to the giving of the note in suit. If, upon the one hand, it could be made to appear that they had had no dealings with, or confidence in each other, or, upon the other hand, that an unlimited confidence had existed between them, the jury, in the light of such facts, would be the better enabled to determine upon the force and effect of the other facts proved, in their bearing upon this question of authority.

If extended business relations had subsisted between them,

and large confidence had often been placed in Adoniram by Daniel, in relation to his manner of doing business, and the jury were satisfied that Adoniram had occasionally placed the name of Daniel upon notes of hand, and put them in circulation, and these facts came to the knowledge of Daniel, and he recognized and treated them as valid, can it be, that in determining whether Daniel had conferred upon Adoniram authority to make and put in circulation such notes, or any subsequent one, the jury should be shut out from the light, which the former dealings and confidence between these parties would afford? We think not. The notes testified to by Thaddeus Weeks and Robert Kennedy, and the facts relating to them, were therefore properly admitted as bearing upon the question of the authority of Adoniram to affix the name of Daniel to the note in suit and to put it in circulation. The weight of this evidence was wholly for the jury, but, when taken in connection with the testimony of Mr. Converse, in regard to the acts and conduct of Daniel, when the note in suit was presented to him for payment, we cannot say that the verdict of the jury upon this point furnishes any such evidence of bias, partiality, corruption or mistake on their part, as will authorize us to set aside their verdict as against the weight of evidence.

If an authority to execute and use such notes had not been given, it is difficult to account for the silence and conduct of Daniel upon their presentment for payment. It would have been more consistent with his honor and integrity as a man of business, to have repudiated, at once, such paper, if forged, than to attempt to shield the forger, even though the offender might be a brother. His pecuniary interests would also have prompted to this. We do not say, that a man might not remain silent under such circumstances, but whether the excepting defendant did so, in the case before us, or was silent because he had given his brother authority to sign and put such notes into circulation, was properly left to the jury, in view of all the facts in the case. If Adoniram had such authority, it is of no consequence whether the plaintiff knew it or not;

nor is it important, upon this point, whether the plaintiff regarded Daniel's signature as genuine or as affixed by another with his permission.

If Daniel's signature was placed upon the note in suit, and the note put into circulation with his authority, in fact, the effect is precisely the same, whether such authority was express or implied.

When a person assumes authority to act, when in fact no such authority exists, and the assumed principal lies by and sees his name used under such circumstances, to the prejudice of innocent parties, and does not subsequently intentionally ratify or adopt those acts, still he may, under certain circumstances, be estopped from denying such authority. If a man will remain silent when he ought to speak, he will not be permitted to speak when he ought to remain silent. In such cases, as the authorities cited in defence fully show, it must appear, before the assumed principal can be charged, that the other party was induced to act, or did act to his own prejudice, by reason of the acts and conduct of the party attempted to be charged, or, in other words, on the faith that such acts and conduct were in fact what they assumed to be. It would be a reproach to the law, if a man could be permitted to lie by and see another act to his injury, upon the faith of his conduct and acts, which he knew were calculated to mislead him, and then turn round and say that he did not intend that which his conduct and his acts fairly indicated. No instruction upon this point was asked or given.

The jury were further instructed that if Daniel, after he had knowledge that his name had been put upon the note in suit, as a maker, ratified and adopted the same, he would be bound thereby, although his name was originally placed upon said note without authority. The soundness of this instruction is not questioned. The words ratified and adopted, as contained in it, seem to have been used as synonymous, and, in fact, a ratification is but the adoption of an act purporting to be the act of the party adopting it. It is not necessary, as is contended in defence, that the act which is ratified or

adopted, should have been originally done solely on the account of the party adopting it, or for his benefit. It is sufficient if it be, apparently upon its face, his act. If this appear, it will be competent for the apparent party to make it his own. The signature of Daniel Day, upon the note in suit, purported to be his own. He might, therefore, rightfully adopt it as such; and, if he did so, nothing is better settled than that such ratification binds him from the date of the note, and not merely from the time of the ratification.

It becomes unnecessary to consider whether the jury were authorized, from the evidence in the case, to find that the signature of Daniel Day, to the note in suit, was ratified and adopted by him as his own, for two reasons; first, because the jury may have found for the plaintiff upon the ground of previous authority; and, secondly, because the presiding Judge instructed the jury that, "if they should find that Daniel Day, when the note was presented to him by Converse, for the purpose of giving him to understand that his, Daniel's, signature thereon was genuine, used language, or conduct, calculated to induce such belief, and Converse was thereby actually induced to believe the signature genuine, it would constitute an adoption thereof, though the real intention of Daniel was only to gain time, for the purpose of making some arrangement to avoid the exposure of the criminal conduct of his brother, and did not intend to adopt the signature as his own," or, in other words, that such language and conduct, under the circumstances named, would be conclusive evidence of a ratification or adoption, in fact, notwithstanding no such thing was intended.

A contract necessarily implies, in its making, the assent of the parties to be bound by it, and such assent cannot exist in fact without corresponding intention. A contract, therefore, cannot exist without the intention of the party, either express or implied, to make it. It is not his contract until he has in some way intentionally assented to it. He may, however, by his conduct, as we have already seen, bind himself so far that he will be estopped to deny the validity of the contract. So,

also, in the case of a subsequent ratification or adoption of a contract, made in his name without authority, such ratification or adoption cannot exist, in fact, without or against the intention of the party to be bound by it. The party, however, may, by his conduct, estop himself from denying an intention to ratify or adopt it.

The distinction between a contract intentionally assented to, or ratified in fact, and an estoppel to deny the validity of the contract, is very wide. In the former case, the party is bound, because he intended to be; in the latter, he is bound notwithstanding there was no such intention, because the other party will be prejudiced and defrauded by his conduct, unless the law treat him as legally bound. In the one case, the party is bound because this contract contains the necessary ingredients to bind him, including a consideration. In the other, he is not bound for these reasons, but because he has permitted the other party to act to his prejudice under such circumstances, that he must have known, or be presumed to have known, that such party was acting on the faith of his conduct and acts being what they purported to be, without apprising him to the contrary.

The presiding Judge, in the instruction now under consideration, makes any words or conduct, at the time the note was presented for payment, on the part of Daniel Day, calculated to induce the belief that his signature to the note was genuine, and actually having and intended to have that effect in the mind of Mr. Converse, the plaintiff's attorney, conclusive proof of the adoption of the note, notwithstanding he did not, in fact, intend to adopt the signature as his own. That this testimony was important upon the question of adoption, there can be no doubt, but its weight was for the jury. The fact that the plaintiff's attorney was intentionally induced to believe the signature to be genuine, did not make it such, unless Daniel intended to ratify and adopt it as such. If he did, it became his note. If he did not, the fact that he intentionally created such belief, in the mind of the attorney, would not necessarily, much less, conclusively, make the note

his; and, if the plaintiff suffered no detriment from the induction of such belief, the excepting defendant would not be estopped from showing that he did not intend to make the note his; and, without this instruction, the jury might possibly have found, in view of the evidence or facts referred to by the Judge, that it was not such. *Hall & al.* v. *Huse,* 10 Mass. 39.

If it be said, that the presiding Judge intended, by the language used, that these facts would be equivalent to an actual adoption of the note, and so the defendant, Daniel Day, would be estopped from denying it, whether he intended it or not, then there would be an infirmity in the instruction, in omitting to state that, before such estoppel could exist, it must appear that the plaintiff had been in some way prejudiced or suffered detriment by acting or omitting to act by reason of such belief. *Roe* v. *Jerome,* 18 Conn. 138; *Dezell* v. *Odell,* 3 Hill, 220; *Pickard* v. *Sears,* 6 Add. & Ell. 469; and *Cummings, Adm'r,* v. *Webster,* 43 Maine, 192.

Whatever view, therefore, we take of this instruction, it is found to be erroneous, and, for this cause, a new trial must be granted. As the cause is to be again tried, we deem it not improper to remark, that we see no error in the refusal of the Judge to give the several requested instructions which were not given, relating as they do to the effect and sufficiency of certain evidence, and not to matters of law; nor in the admission of the disclosure of Daniel Day, referred to as a part of the case, so far as it related to his taking security of Adoniram J. Day for general liabilities, and beyond this it was excluded.

*Exceptions sustained and new trial granted.*

TENNEY, C. J., and RICE, HATHAWAY, and APPLETON, J. J., concurred.

DAVIS, J., stated his reasons for concurring in the result:—

In the trial of this cause, there were three questions for the jury, upon which testimony was admissible, and appropriate instructions were necessary.

1st. Was the signature of Daniel Day to the note in suit genuine?

It seems to have been conceded at the trial, that it was not; but on this point no questions are reserved by the exceptions.

2d. If the signature was not genuine, was it made by any person authorized by Daniel Day to sign his name upon it, for him?

Such authority might have been proved by evidence of *express grant;* or facts might have been proved, from which a jury could have *inferred* that such authority had been granted. The report furnishes no evidence of authority *expressly given.* If there was any evidence, from which a jury could have *inferred* that such authority was given to any one, it was to Adoniram J. Day. But I cannot concur in the opinion that such authority could have properly been inferred from the silence of Daniel Day when the note was presented to him. If it had purported to be signed by " A. J. Day for Daniel Day," it would have been otherwise. But it purported to have been signed by Daniel Day himself, and his silence furnishes no ground for the inference that he authorized any other person to sign it for him. The case does not show whether the handwriting was made to resemble his, or whether he examined the signature with sufficient care to have discovered that it was not genuine. And, even if he knew that it was forged, and refrained from disclaiming it, for the purpose of screening his brother from exposure, such impropriety of conduct could not authorize the inference that he had *authorized his brother to sign his name.* The question on this point is not one of *estoppel,* but one of *authority actually given.*

I agree, that the previous conduct and relations of the parties were proper matters of evidence. And, in regard to the other notes, which were admitted, with testimony tending to show that Daniel Day acknowledged them, they might properly have been admitted if it had been proved that *his name was signed upon them by A. J. Day,* and that *he knew that*

*fact*, at the time of his acknowledgement. Unless his name was signed by his brother, and he examined the notes so as to have known it, his acknowledgement would be no evidence *that he authorized his brother to sign his name.* Where one indorses frequently for another, it often happens that he does not read a note before signing, and cannot tell afterwards whether he signed a particular note, except by examining the signature. The case furnishes no evidence that the signatures of Daniel Day, upon the other notes, *were made by his brother;* or, if they were, that *he knew that fact*, at the time when it is contended that he acknowledged them. I think, therefore, they should have been excluded; or, if admitted, more specific instructions should have been given.

3d. But, if no *actual authority was given* by Daniel Day to his brother to sign his name, has he so conducted himself, *with* the plaintiff, as to be estopped from denying it? If one acknowledges his signature to a note to be genuine, and the person making the enquiry *takes the note on the faith of such admission*, he is afterwards estopped from denying the genuineness of his signature. *Cooper* v. *Leblanc*, 2 Stra. 1057; *Leach* v. *Buchanan*, 4 East, 226. Otherwise he is not estopped. *Hall* v. *Huse*, 10 Mass. 39. If, in consequence of such admission, the holder should delay enforcing his claim against another party, and lose security which he might have obtained, perhaps it would be the same as if he had taken the note on the faith of such admission. I am therefore of opinion, not only that the presiding Judge erred in instructing the jury that such admission was an adoption of the note, but I also think he should have instructed them that the defendant was not estopped by such admission from denying the signature, unless the note was taken in consequence of it, or the holder was otherwise injured by being induced thereby to refrain from enforcing it against the other party, when he might have secured it.