SHUENFELDT and others *v.* JUNKERMANN and another.

*(Circuit Court, N. D. Iowa, E. D.* April Term, 1884.)

1. LEX LOCI—CONTRACTS VOID IN ONE STATE AND GOOD IN ANOTHER — SCOPE OF INVESTIGATION ALLOWED TO COURTS.

   In a question involving the validity of a contract *as such* the court may consider the very time and place when and where the act was done that gave life to the contract.

2. SAME — THE PLACE OF THE CONTRACT IS DETERMINED BY THE QUESTION, WHERE WAS THE CONTRACT COMPLETED?

   The contract of a traveling agent, which required ratification by his principal, is deemed to have been made at the place where the ratification was given.

At Law.

*Henderson, Hurd & Daniels,* for plaintiffs.

*Fouke & Lyon,* for defendants.

SHIRAS, J. On the trial of this cause before a jury, it appeared that the plaintiffs were wholesale liquor dealers, residing and doing business in Chicago, Illinois, and the defendants were druggists, residing and doing business in Dubuque, Iowa. The action was based upon acceptances of defendants, and upon an open account. The defendants pleaded that the acceptances, as well as the account, were for intoxicating liquors sold in violation of the statute of Iowa, commonly known as the prohibitory liquor law. On the part of the defendants it was claimed that the liquors were sold in pursuance of a contract entered into between one Connors, an agent of plaintiffs, and the defendants, at Dubuque, Iowa, by which it was agreed that plaintiffs were to furnish to defendants, from time to time, various kinds of liquors at certain prices, and put up in packages to suit the market. On the part of plaintiffs it was denied that Connors made any such agreement, and, further, that if he did he had no authority to make any contract for plaintiffs, he being merely a traveling agent, with power to solicit trade and orders, which were to be forwarded to Chicago for approval or disapproval by plaintiffs. The evidence showed that the liquors were furnished by plaintiffs upon the orders of defendants, two of which were given to Connors in person when at Dubuque, and the others were by letters directed to plaintiffs, the goods being delivered to the railroad company at Chicago. The court instructed the jury that if the agent, Connors, had authority to make a completed contract of sale, and did in fact make a contract at Dubuque, under which the liquors in question were furnished, then the sale was a violation of the statute of Iowa, it not being questioned that the liquors were intoxicating, and intended to be used as a beverage. See *Second Nat. Bank* v. *Curren*, 36 Iowa, 555; *Taylor* v. *Pickett*, 52 Iowa, 467; S. C. 3 N. W. Rep. 514. The jury was further instructed that if the agent, Connors, merely procured or arranged for the forwarding of orders from time to time by defendants, which orders, when received by plaintiffs, were subject to their approval or disapproval, and which they were under no obligation to fill unless approved, then the sale would be deemed to be a sale made in Illinois. See *Tegler* v. *Shipman*, 33 Iowa, 194. The court also ruled that if Connors, not having authority to make a completed contract of sale on behalf of plaintiffs, nevertheless did in form enter into a contract at Dubuque with defendants, whereby he assumed to bind plaintiffs for the future delivery of liquors in quantities to be fixed by defendants, which contract was not binding upon plaintiffs by reason of the want of authority on the part of Connors, and the plaintiffs approved or ratified the contract by forwarding the goods from time to time to defendants as ordered by them, the act of affirmance which gave binding force to the contract being done in Chicago, the contract will be deemed to be made in Chicago, and being valid there would be enforced in Iowa, unless it was shown that the sale was made with intent to enable defendants to violate the laws of Iowa. The jury found a verdict

for plaintiffs, and defendants move for a new trial, on the ground that there was error in the ruling of the court upon the last point named.

On the part of the defendants it is claimed that the act of ratification has relation back to the time, place, and circumstance when and where the terms of the proposed contract were arranged between the agent and the defendants, and supplied the authority then wanting, thereby rendering the contract as binding as though the agent originally possessed the authority to make it. In support of this proposition counsel cite the cases of *Beidman* v. *Goodell*, 56 Iowa, 592; S. C. 9 N. W. Rep. 900; *Eadie* v. *Ashbaugh*, 44 Iowa, 519; *Lowry* v. *Harris*, 12 Minn. 255, (Gil. 166;) *Hankins* v. *Baker*, 46 N. Y. 670; *Moss* v. *Rossie Lead Co.* 5 Hill, 137; *Forsyth* v. *Day*, 46 Me. 176; and Story Ag. § 244,—all of which recognize and enforce the general rule as given by Story, that—

"A ratification, also, when fairly made, will have the same effect as an original authority has, to bind a principal, not only in regard to the agent himself, but in regard to third persons. * * * In short, the act is treated throughout as if it were originally authorized by the principal, for the ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy."

That this is the general and the correct rule to be applied to cases requiring the construction and application of the contract to its subject-matter, for the purpose of ascertaining and protecting the rights of the parties thereto, cannot be questioned, as it is sustained by authorities without number; but the point now presented is whether this rule is properly applicable to the question involved in the instruction given to the jury and excepted to by defendants. In the case at bar the court is not called upon to determine the rights of the parties as defined by the terms of the contract itself. The defendants are not asserting, as against the plaintiffs, any rights or benefits conferred upon them by the express provisions of the contract itself. On the contrary, their defense is that the contract is not binding upon them, and never took effect, because it is, as they allege, illegal and void, in that it was made in Iowa in violation of the statutes of this state. The defendants, having received all the benefits conferred upon them by the contract, are now seeking to defeat its enforcement, not upon any question arising on the terms of the contract, but upon the ground that, at the time and place the contract was made, it was invalid and void. Upon such an issue, is there any reason why the court shall not ascertain the very facts of the case and decide accordingly? Is there any reason why the plaintiffs are estopped from proving the exact truth of the transaction? The point of inquiry is, when and where was the contract of sale entered into? "A contract is an agreement in which a party undertakes to do, or not to do, a particular thing." *Sturges* v. *Crowninshield*, 4 Wheat. 197. A contract does not become such until the minds of the contracting parties meet.

When and where did the plaintiffs agree to sell the liquors in question to the defendants? Connors certainly did not make or complete a contract with defendants, for it is admitted, in the aspect of the case now under consideration, that he had no authority to make a contract or to bind plaintiffs. The utmost that can be said is that he, not having authority to make a contract, undertook to agree upon the terms of sale, which did not, however, bind plaintiffs until they had given their assent thereto. The contract was made when plaintiffs, by approval, acceptance, or ratification, assented thereto. Then, in fact, for the first time, did the minds of the contracting parties meet, and thereby render binding and obligatory that which before was, in effect, only a proposition for a contract. The rule is well settled that where orders are given for the purchase of goods to an agent who has not authority to sell, but which are forwarded to the principal for his approval, the contract is deemed to be made at the place of approval. *Tegler* v. *Shipman*, 33 Iowa, 194; *Taylor* v. *Pickett*, 52 Iowa, 469; S. C. 3 N. W. Rep. 514. The principle recognized in these cases is applicable to the question presented in the case under consideration, and no good reason is perceived for making a distinction in the rule to be applied.

The same doctrine is enforced in cases of contracts entered into on Sunday, where, by the law of the state, such a contract would be void. A ratification thereof on a week-day is held good. Thus, in *Harrison* v. *Colton*, 31 Iowa, 16, the supreme court of Iowa cite approvingly the rule given in Story, Cont. § 619, "that any ratification of a contract on a week-day, such as a new promise to pay, a refusal to rescind on demand made, a partial payment, and the like, would render the contract binding, though originally made on Sunday." If the ratification of a contract must, under all circumstances, be held to revert back to the time and place of its inception, and only that effect can be given to it, it would follow that a Sunday contract could not be ratified on a week-day, because, if that were the rule, the ratification must be held to have taken effect at the time the original contract was entered into, and a ratification taking effect on Sunday would be open to the same objection that invalidated the original contract. The ratification is held good, however, because it takes effect on a week-day, and the courts recognize that fact, and, in consequence thereof, give effect to the contract originally void. The true rule is that when the question involves the validity of the contract, as such, the court may consider the very time and place where and when the act was done that gave life to the contract. In the case at bar this act took place in Chicago, and the contract must be held to have been made at that place, and not in Dubuque. Consequently, there was no error in the instructions given to the jury upon this point, and the motion for new trial must be overruled.