[No. 1420.]

## JOHN M. WRIGHT AND S. C. WRIGHT, APPELLANTS, v. THE CARSON WATER COMPANY, A CORPORATION, RESPONDENT.

### ON REHEARING.

SECOND APPEAL—FACTS NOT CHANGED, COURT BOUND BY FORMER DECISION.—
Where, on the first trial of an action against a corporation on a note, there was evidence that its execution was known to the majority of trustees individually, and it was held on appeal that knowledge communicated to trustees as individuals, and not in their capacity as a board, could not form the basis of an implied contract or of a ratification, the absence on second trial of evidence of a payment of the note which was adduced on first trial, and evidence on second trial that the execution of the note was known to the remaining member of the board individually, does not set up a new state of facts, which would avoid the rule that the decision on first appeal becomes the law of the case so far as applicable to facts developed on second trial. (BIGELOW, C. J., dissenting.)

APPEAL from the District Court of the State of Nevada, Ormsby county; *Richard Rising,* District Judge.

For former opinion, see 22 Nev. 304.

The facts sufficiently appear in the opinion.

*Rives & Judge,* and *Wm. Woodburn,* for Appellants.

*Torreyson & Summerfield,* for Respondent:

I. It is not a question in this appeal as to whether or not the decision of a majority of the court in the former appeal (*Edwards v. Carson Water Co.,* 21 Nev. 469) is good law, or as to whether or not this court in subsequent cases involving the same legal questions and principles will be bound by it, but we claim and insist that this court is bound by the decision of the former court involving the same legal question and principle and that the same question cannot now be litigated or decided in a different way than on the former appeal; and this in *res adjudicata.*

II.   A prior decision by the appellate court upon a point distinctly raised is more than authority in the same case, being a final adjudication from which the court itself cannot depart.   (*Chicago R. R. Co.* v. *Hull*, 24 Neb. 730; *Holley* v. *Holley*, 96 N. C. 230;   *Warden* v. *McKinnon*, 99 N. C. 254; *Phelan* v. *City and Co. San Fran.*, 20 Cal. 39; *Heffner* v. *Bromnell*, 75 Ia. 341; *Adams Co.* v. *Burlington*, 55 Ia. 342; *Gould* v. *Sternberg*, 128 Ill. 510, 15 Am. Rep. 138; *Fontenburg* v. *Fraser*, 5 Ark. 200; *Gwinn* v. *Hamilton*, 75 Cal. 266; *Applegate* v. *Downe*, 17 Or. 299; *Stewart* v. *Preston*, 80 Va. 625; *Stewart* v. *Stebbins*, 30 Miss. 66;   Chand. on *Res Adjudicata*, sec. 22, p. 31.)

III.   The conclusiveness of a decision or decree of a court of last resort is not vitiated by the fact that it is one of affirmance by a divided court.   It forever settles the question decided as to that case.   (*Durant* v. *Essex Co.*, 7 Wall. 107; *People* v. *Circuit Judge*, 37 Mich. 377;   Herman on Estoppel, vol. 1, sec. 116.)

By the Court, BONNIFIELD, J.:

A petition for rehearing was filed by the appellants in which it is claimed that they introduced on the second trial testimony pertinent to the issue raised by the pleadings, showing an entirely different state of facts from that shown at the first trial, by which they contended that the case is taken out of the rule of *res judicata*, and they ask to be heard on the matter in argument before the court.

The rehearing was granted.   We held before, and still hold, that the legal questions and principles which arose and were decided on the former appeal, whether they were correctly decided or not, have become the law of this case so far as they are applicable to the facts developed on the second trial.   We so held upon the overwhelming weight of authorities then cited.   (39 Pac. Rep. 872.)

We also held that, substantially, the same state of facts was presented on the first trial and first appeal as on the second, upon the vital question at issue by the pleadings and that this court on the former appeal had decided against the validity of the note on which this action was brought and had decided that it does not bind the respondent.   We

still so hold. It is claimed by counsel for appellant that the record discloses an entirely different state of facts from that disclosed on the first appeal in two respects, to wit:

1.   That on the first appeal the record contained evidence tending to show payment of said note, but the record on this appeal does not contain such evidence.

2.   That on the first appeal the record contained a denial of H. M. Yerington, one of the trustees of the respondent, of all knowledge or information on his part of the existence of the note, or indebtedness to Wright, prior to the time he became president of the company in 1889, and that the present record shows that he had such knowledge or information in 1888.

But we regard the alleged new state of facts as immaterial under the decision and ruling of this court on the former appeal, and that the same does not take the case out of the rule of *res judicata.* Let us inquire, then, what legal propositions or questions were then decided that are decisive of this case on this appeal notwithstanding said alleged new state of facts. It was conceded that there was no order or resolution of the board of trustees of the defendant authorizing the execution of the note in suit and that it was not the note of the company and that the note did not bind the company by reason of any express authority given the company to execute it.

Then the question was, did it become the note or become binding on the company by reason of its ratification? This question was argued and considered in all its phases by counsel of the respective parties, and by the majority and minority of the court, as appears by their respective opinions.

In concluding the argument and the opinion of the majority of the court on the question of ratification, the court said: "As we understand the law to be it is this: That before an individual or corporation can be held to have ratified the unauthorized acts of his or its agents, every detail of the transaction must have been made known to the principal. If, after obtaining such knowledge, the principal fails to act, long and continued silence will be deemed an approval of the act, and such ratification relates back and is equivalent to a prior authority to make the contract."

As to the correctness of the rule as above stated there was no disagreement among the members of the court. But as to whether the knowledge and acquiescence of the trustees individually and not as a board would bind their principal, the corporation, there is a conflict between the majority and minority opinions of the court given on the former appeal. In the majority opinion the language used in the case of *Yellow Jacket Company* v. *Stevenson,* 5 Nev. 224, is quoted and adopted by the court as applicable to this case, to wit: "It cannot, we think, be maintained that the knowledge obtained unofficially by three of the trustees, that Stevenson was engaged in extracting ore from the mine is sufficient to charge the company with such knowledge, as any number of trustees acting individually, and not as a board, cannot act for the corporation, so any information obtained by individual trustees and not communicated to the board, should not, it would seem, become the foundation of a contract binding upon the company. The trustees represent the corporation only when assembled together and acting as a board. Such being the law, how can it be claimed that information communicated to them individually, not to the board, can be made the foundation of an implied contract on the part of the corporation?"

As further authority on the same point and to strengthen its position on the question last above named, the court cited the case of *Hillyer* v. *Overman,* 6 Nev. 55, in which case it is held that: "The trustees can only bind the corporation, under our law, when they are together as a board, acting as such."

It is manifest from the above quotations from the opinion of the court, that it intended to hold and did hold in effect, that no knowledge derived by the trustees, and no information communicated to them individually; but not to them in their capacity as a board, would be sufficient to charge their principal, the corporation, with such knowledge or information whereby, in law, the corporation would be deemed to have ratified the unauthorized acts of its agents by its acquiescence, or its silence, or its delay, in repudiating such acts. That such was the intent and the decision is apparent from the plain reading of the opinion above given itself.

And it seems that it was so understood at the time by all the members of the court. · The correctness of the decision, however was denied by the dissenting member of the court. In the dissenting opinion in the case on the above rulings of the court it is said: "As to the case of *Yellow Jacket Mining Company* v. *Stevenson*, 5 Nev. 224, while it was perhaps upon the whole, correctly decided, that part of the language quoted by my associates from pages 231, 232 of the opinion is not law, nor was it so decided to be in that case. It is dictum, and the opinion shows that the judge writing it had doubts of its correctness, for he immediately adds (page 232): 'But, however this may be, it cannot possibly be maintained that a corporation can be charged with acting upon or recognizing a fact which is known only to a minority of its trustees.'"

This is the real ground of the decision—that is, that it had not been shown that a majority of the board knew of the transaction, and if not, the decision is doubtless correct upon that point, because, as the minority could not by formal resolution either authorize the act in the first place or ratify it afterwards, knowledge and acquiescence upon their part could not have that effect; but in the case at bar it is shown that a majority of the board knew all about the whole situation, and that the company, by reason of its silence, acquiescence and laches of both the board and stockholders, is estopped to deny its liability. Corporations should be held to the same principles of honesty and fair dealing that individuals are. But as they can only act through their agents, if acquiescence and laches upon the part of the agent will not constitute ratification and estoppel by the corporation where it would in the case of individuals, then they are exempt from the rules applying to others. That a corporation may ratify or estop itself by the knowledge and acquiescence of its representatives in unauthorized acts, without the knowledge being received or acted upon at a formal meeting of the board or stockholders. See, in addition to the cases already cited, *Scott* v. *Railroad Co.*, 86 N. Y. 200, and others."

It will be seen from the examination of the majority opinion itself that the decision on the former appeal as to knowledge and ratification was and is that the knowledge

derived by or the information communicated to any number of trustees as individuals, and not to them in their official capacity as a board of trustees, cannot be the foundation of an implied contract on the part of the corporation or of the ratification by it of the unauthorized acts of its agents. That such is the decision is clear not only from the said opinion, but from the minority opinion in the case. Hence the new alleged state of facts does not avoid the rule of *res judicata,* for it relates to payment of the note and to knowledge received by and information communicated to a trustee individually and not to the board.

The court also said in the same opinion that "the evidence in this case is conflicting and obscure in many respects," but it is nowhere intimated that the evidence is conflicting in relation to the fact that the board of trustees had no knowledge or information as a board of the several matters communicated to the trustees individually. If it had found that such conflict did exist in this respect it would have been unnecessary to have gone further.

We are of opinion that the judgment and order appealed from must be affirmed. It is so ordered.

BELKNAP, J.: I concur.

BIGELOW, C. J., dissenting:

Action upon a promissory note for $2,000 and interest. The answer denies its execution or delivery. Upon this issue the plaintiff upon the trial before a jury proved that the note was executed by the president and secretary of the defendant and delivered on the day it bears date, in 1876; that in 1875 the plaintiff's testator had loaned the defendant $2,000, taking a note therefor, which was renewed in 1879 by a note made in the same manner as the present one, which was in turn renewed by the note in suit; that upon the execution of the new notes, the former notes had been surrendered to the defendant; that the defendant had paid interest on the notes up to 1889; that they appeared all that time as an outstanding indebtedness on the company's books, and had been included as such in all reports by the secretary to the board of trustees; that the president, who was also the general manager of defendant, and the secretary, constituted a majority of the

board, and, of course, knew of the execution of the notes, and the notes had been several times particularly called to the attention of the third trustee; that no claim had ever been made by any one that the company was not liable upon them, or that they were not the company's notes, until 1889. Upon these, and similar facts the plaintiffs claimed, although they had not proven any formal order of the board authorizing the execution of the note, that the defendant was liable upon it, and was estopped from denying such liability.

Upon this evidence, which, of course, must at that time be taken as absolutely true, the note was offered in evidence, but upon objection was excluded by the court on the ground that it was not shown to be the defendant's note. This ruling was a virtual non-suit, and necessarily resulted· in a verdict for the defendant.

If the officers executing the note had implied authority to do so, or if its execution had been ratified by the board, either expressly or by acquiescence and silence, the defendant was as much bound by it as if authorized in the first instance. (*Cook* v. *Tullis*, 18 Wall. 332; Morawetz Corp., sec. 618.) Ratification is a question of fact, to be decided by a jury (*George* v. *Nev. Cent. R. R. Co.*, 22 Nev. 228), and this ruling, whereby the court, in effect, decided there was no evidence even tending to prove defendant's liability, is so clearly erroneous that no one will attempt to defend it. The bare fact that it was signed by the defendant's president and managing agent, and the secretary, made a *prima facie* case, at least, that entitled the plaintiffs to go to the jury on the question. (*Crowley* v. *Mining Company*, 55 Cal. 273.) Upon the ground of ratification such evidence would seem to make, not only a *prima facie* case, but one that would, if the evidence were not contradicted, be absolutely conclusive.

But without contesting, or attempting to contest this fatal error, the majority of the court are of the opinion that upon the former appeal of the case this court decided something that justifies the ruling; that the decision so made, whether right or wrong, has become the law of the case, and as such, binding upon both the trial court and this court. In this conclusion I cannot concur.

In my judgment that decision is not decisive of the present appeal, for the reasons:

1. The questions presented upon the two appeals are entirely different.

2. The question now involved was not attempted to be then decided.

3. As it was not involved in that appeal, admitting that the court attempted to decide it, it could not do so, and what is said concerning it is merely obiter.

I have already stated the question now involved; and I will now try to state what was then presented to the court. Upon that appeal it appeared that the trial court had made findings in favor of the plaintiffs, on which judgment had been entered against defendant for the amount due upon the note. Then, upon the defendant's motion, made upon the ground that the evidence did not support the findings, it had granted a new trial. From this order the plaintiffs appealed. The one question presented upon that appeal was whether this order was erroneous. When is an order granting a new trial on the ground that the findings are not supported by the evidence erroneous? In *Treadway* v. *Wilder*, 9 Nev. 70, the rule is stated thus: "The court below ought not to grant a new trial when there is conflicting evidence, except the weight of evidence clearly preponderates against the verdict. But when the court grants a new trial, the appellate court will not interfere unless the weight of evidence clearly preponderates against the ruling of the court."

In Hayne on New Trial, sec. 288, after a thorough summing up of the decisions, the author says: "Perhaps as good a statement of the rule as can be given (so far as motions for new trial are concerned) is that a motion for new trial, on the ground of the insufficiency of the evidence, is addressed to the discretion of the court below, and the ruling thereupon will not be disturbed except for an abuse of discretion."

The particular finding which it was claimed on that appeal was not supported by the evidence was the one in which it was found that the defendant had executed the note, and the exact question then presented was whether there was such a preponderance of evidence in favor of the finding that

it had, as made the order granting a new trial an abuse of discretion. The dissenting judge was of the opinion that there was, and that upon the undisputed and uncontradicted facts, the defendant's liability was clearly established. He there said (21 Nev. 500): "Rejecting the plaintiffs' testimony wherever it conflicts with that of defendant, and taking the view of it most favorable to the defendant, as under the circumstances we are required to do, it shows both ratification of the note by the corporation, and such facts as should estop it from contesting its liability." On the other hand, the majority of the court were of the opinion that there was not such a preponderance against the ruling as required the court to reverse the order. In their opinion it was said (p. 492): "The evidence in this case is conflicting and obscure in many particulars. The motion for new trial was made upon the ground, among others, that the findings of fact were contrary to and not supported by the evidence, and that the judgment was contrary to law. It does not appear on what ground the motion was granted. The granting or refusal of a motion for a new trial on the ground of insufficiency of the evidence to support the findings is addressed to the sound discretion of the judge who presided at the trial of the case in the lower court, and on appeal from such order, where the court below, in the exercise of a sound discretion, grants a new trial on conflicting evidence, appellate courts have always refused to disturb the order."

These two extracts quite clearly indicate the question then before this court. Virtually it was whether there was any evidence in the record then presented to show that the corporation was *not* liable on the note. Now, the question is, whether there is any evidence in the present record to show that it *is* liable. These two questions are as wide apart as the poles, and the decision of one should in no wise control the decision of the other. Upon the second trial, had judgment been again rendered in favor of the plaintiffs upon the same evidence, and then another new trial been granted, upon appeal that decision would have been conclusive of the point that granting such new trial was not an abuse of the discretion of the court, and that there was some evidence to justify its being granted, but it ought to require no legal

acumen to see how different that question would be from that now presented.

In *Klauber* v. *San Diego, etc., Co.*, 98 Cal. 105, the court said: "As this rule is, however, applicable only to matters which have been determined by the court, it is only where the same matters that were determined on the first appeal are brought before it on a second appeal that the rule can be invoked, and, being a rule that tends to prevent a judicial consideration of the case, it is not to be extended beyond the exigencies which demand its application."

*Moore* v. *Murdock*, 25 Cal., is square upon the point that a decision upon a plaintiff's appeal affirming an order granting a new trial is not a determination that there is no evidence to support the plaintiff's case. *Mahan* v. *Wood*, 79 Cal. 258, also clearly points out the difference that exists between an appeal from an order granting a new trial where the evidence is conflicting and an appeal from a judgment in the case. Nor do I think that the court upon the former appeal was guilty of the impropriety of attempting to decide that the evidence then in the record did not make even a *prima facie* case against the defendant. There is not one word in the record showing an intention to do so. Nowhere is it there said that there was no evidence tending to establish the defendant's liability on the note, nor, as a matter of law, that it was not the defendant's note. As I have already shown, there was no occasion to consider that point. While the language used is not always clear as to just what was intended to be expressed, a fair examination of it shows that the court was simply reviewing the testimony for the purpose of showing that there was some evidence to support the ruling granting the new trial—the question before it—and with no thought of going on and usurping the functions of a trial court and jury by deciding questions of fact not before it, and that it had no jurisdiction to decide if they were.

I do not, however, deem it necessary to pursue this proposition further, for, admitting that the attempt to forestall the question was made, the court did not have the power to do so.

I recognize the rule that what is decided upon a first appeal is not generally open to reconsideration upon a second

appeal, although there are exceptions to the rule, even as thus stated.   (*U. S.* v. *Elliott*, 41 Pac. Rep. 720.)

But this principle does not extend to all that may have been said in rendering the first decision.   It applies only to matters before the court for decision, and not to uncalled-for expressions of opinion.   Such expressions are obiter dicta, and not authority either in that case or any other.   To this effect the authorities are numerous and unanimous.

In *Wixon* v. *Devine*, 80 Cal. 385, the court said:

"We have recently, in *Sharon* v. *Sharon*, 79 Cal. 633, had occasion to consider this doctrine of the law of the case, which means, as we understand it, that the court having erroneously decided some matter of law will always stand by the error in that case, although it will not allow it to be a precedent in another, and we there determined that the doctrine had nothing to commend it to the favor of the court, and that its application would not be extended beyond the cases in which it had been held to apply.   It has never, that we are aware, been held to apply to expressions in an opinion which are merely obiter."

So, also, in *State* v. *McGlynn*, 20 Cal. 233, the court said: "The law upon a question does not become settled by the mere opinion of the judges unnecessarily expressed, but only by a decision of the point, when being the ground, or at least one of the grounds, of a judgment."

The case of *United States* v. *Bank of United States*, 5 How. 395, is, so far as this point is concerned, quite on all fours with this case.   There, upon a first appeal, the majority of the court had attempted to construe an instrument in writing, the construction of which was unnecessary to the disposition of that appeal.   Upon the second appeal the court said: "However high the regard of judges that did not concur may be for the views entertained and expressed by other judges on a question of law not brought up for decision, still it is impossible to recognize such views as binding authority consistently with the due administration of justice, as by so doing the merits of the controversy might be forestalled without due examination.   We therefore feel ourselves at liberty to treat of the structure and character of the instrument before us as an open question."   In anology to what was there

held I say that we should consider ourselves at liberty to consider and determine the question now before us upon its merits, instead of following what was said on the first appeal concerning matters not at all before the court at that time. Instead of straining to follow such a decision, which results in the defeat of an apparently just and legal claim, the effort should be, now that the error is admitted, to avoid following it, if possible, and thereby to do justice.

*Luco* v. *DeToro* (Cal.) 34 Pac. Rep. 516, is also quite in point here. In that case judgment had gone against the plaintiff and he appealed. As error, he alleged that the finding of the court as to whether he had performed the conditions of the contract upon which the action was brought was ambiguous and uncertain. On appeal the supreme court sustained this contention, but added that if, as contended by respondent, the finding was not uncertain, but was a finding in favor of respondent on that issue, then it was not supported by the evidence, which showed clearly that the plaintiff had performed. Upon the second trial, upon the same evidence, the trial court found that he had not performed. Upon a second appeal the plaintiff claimed that the point had been settled in his favor on the first appeal, and so far as the language was concerned he was certainly right. In answer to this, however, the court said: "The ground upon which the former judgment of this court was rendered was the failure of the trial court to make a finding upon the issue, and the statement in the opinion that the finding which it had made was ambiguous and uncertain rendered what was subsequently said about the insufficiency of the evidence to support the construction placed upon it by the respondent in his argument merely obiter." Such a rule as the above would relieve us, just the same as it did that court, from the consequences of·a mistake made on the first appeal, and leave us at liberty to decide this case upon its merits. *People* v. *Skidmore,* 27 Cal. 287; *Mulford* v. *Estudillo,* 32 Cal. 131; *Lathrop* v. *Knapp,* 37 Wis. 307; *Barncy* v. *Winona, etc., Co.,* 117 U. S. 228, are to the same effect.

It is said that upon the first appeal the question of ratification was argued and considered at great length. That is true, but it is no argument against what I have said above.

As the appellants then claimed that all the evidence showed ratification, it was necessary for them to consider and argue it all. As the dissenting judge took the same view, it was necessary for him to do the same. But this is quite a different thing from going to the extreme on the other side, and holding that there was no evidence of ratification, as my associates now claim was done. It made no difference, if the order was to be affirmed, whether there was or not. If there was enough to support the order granting the new trial, that is, if the evidence was substantially conflicting, that ended the matter, and the judgment must be affirmed. Anything said farther than to show that there was some evidence to support it was pure dictum.

As it seems to me, one other conclusive reason why that decision should not be treated as conclusive upon this appeal may be mentioned. It cannot be denied that if anything was decided in that case farther than that there was a conflict of evidence as to the defendant's liabiliiy upon the note, it was a question of fact. Whether the defendant had authorized the note, or had ratified its execution, were clearly questions for the jury. It is upon questions of law, and not upon questions of fact, that the decision of the court becomes the law of the case. (*Sneed* v. *Osborn*, 25 Cal. 619, 628.)   In *Mattingly* v. *Pennee*, 105 Cal. 514, that court again said: "It is settled beyond controversy that a decision of this court on appeal, as to the question of fact, does not become the law of the case."

My associates have not deemed it necessary to discuss these questions in their opinion. The view there taken seems to be that if the material evidence of ratification is the same now as on the first appeal, what was then said must control the present disposition of the case. In my judgment, however, that consideration cuts but a comparatively small figure. The only way that Mr. Yerington's knowledge or want of knowledge of the note in any way important is that upon the first appeal the court seemed to be of the opinion that the evidence of ratification was not conclusive, because it was not shown that he, being the third trustee and also a large stockholder, had knowledge of it. If such were the law, it was material to show that he did have such knowl-

edge, and this was done by showing that the secretary's reports containing it were particularly called to his attention in 1884 and again in 1888. In my judgment this does make quite a material difference in the case, and is sufficient of itself to release it from the rule of *res adjudicata;* especially is this the case if the question of ratification is to turn on whether all the trustees had knowledge of, and acquiesced in, the execution of the note. But it is not by any means the only reason why the former decision does not bind us now, nor even the most important one.

It also seems to be their impression that the court then held that although the trustees, who were also the principal stockholders of the corporation, knew of the existence of the note, that such information would not be sufficient upon which to found ratification, although they acquiesced in its execution, unless it was obtained in some official manner, or was communicated to the board as such.

It is not asserted now that such is the law, but only that it was then so decided. In the view I have taken of the case it is not very important whether it was or not, but I think nothing of the kind was intended. The court held that the evidence showed that only two of the trustees knew of the note, and the extract from the case of *Yellow Jacket Co.* v. *Stevenson* was introduced for the purpose of showing that such knowledge of the part of a board was not sufficient.

But admitting that it was so held and that it was a question before the court, it now appears in the evidence that two of the trustees, who were also the president and secretary, executed the note; that it was entered and carried as an outstanding indebtedness on the books of the company; that it was contained in the reports of the officers, and that these reports were examined and discussed by the trustees, and especially by the third trustee. If all this does not constitute official information, or information to the board, it would be interesting to know what would.

While I concurred in the first decision upon this appeal affirming the judgment, further argument and consideration have thoroughly convinced me that it was wrong, and I therefore dissent from the judgment.