Carroll,   ⎱
March 5, 1912. ⎰

## Conway National Bank *v.* Pease.

One who seeks to establish an estoppel by misrepresentation is required to prove (1) a misrepresentation of a material fact in respect to a subject-matter in which the parties have an interest or are dealing; (2) the existence of a legal duty owed by the party sought to be estopped to the person asserting the estoppel; and (3) a violation of the duty in such manner that the person asserting the estoppel could maintain an action for damages against the author of the misrepresentation.

One who in good faith makes a positive representation as to a material fact, knowing or having reasonable cause to believe that another will act in reliance thereon, is under a duty to exercise care; and the violation of such duty may be the basis of an equitable estoppel, on the ground that the representation constitutes an active intervention which has resulted in another's injury.

The maintenance of silence, under circumstances calculated to mislead another and to induce him to act thereon to his damage, may be found to be active intervention and a representation which calls for the imposition of a duty to exercise care.

Where a misrepresentation is negligently made, or negligently allowed to stand, the party injured thereby, in order to establish an estoppel against the author, must show that he acted with reasonable prudence in relying thereon; but if the misrepresentation is made with fraudulent intent, the injured party is only required to show that he relied upon the false statement, honestly believing it to be true.

Where the holder of a promissory note, having suffered loss through the misrepresentation of one whose name is forged upon the instrument as indorser, brings an action against the latter, the measure of his damages is not the sum due on the note, but the loss which he is shown to have sustained from a reliance upon the defendant's statement.

Assumpsit, to recover the amount due upon a promissory note for $500, dated April 11, 1910, payable in two months to the order of the plaintiffs, signed by Arthur W. Charles as maker, and purporting to be indorsed by the defendant. The defendant pleaded the general issue and seasonably denied the signature purporting to have been made by him. Trial by jury and verdict for the plaintiffs for the amount of the note. Transferred from the May term, 1911, of the superior court by *Chamberlin,* J. The instructions to the jury, so far as they pertain to the questions raised by the defendant's exceptions, were as follows:

"When Mr. Pease received notice that the note bearing his signature was in the bank, it was his duty to inform the bank

that his name had been forged, if that were the fact; and if he failed to do this, and the bank was thereby induced to make no effort to collect of Mr. Charles, Mr. Pease would be liable on the note.    He would be estopped from setting up the defence of forgery. . . .    When a person finds that another has committed a crime or done any act in his name whereby a third person may be misled and damaged, and it is brought to his attention, the law imposes the duty upon him to immediately act, as a reasonable and prudent man would act under all the circumstances, to save the innocent party and to expose the guilty party, not only to save himself, but to give the party imposed upon—the innocent party—an opportunity to save himself as far as it is possible to do so. . . . When Mr. Pease got notice that a note bearing his signature was there [in the bank], if he knew any fact from his knowledge of Mr. Charles, or what was said to him by Mr. Brown, or the information given him by that letter, which the bank ought to have known to protect itself, it was his duty to state it to the bank, or inform them of it.

"This arises, perhaps, under what is known in law as the doctrine of estoppel.    That is a name which is of no consequence, because the names of principles of law don't count for much.    I can illustrate it better than I can name it.    If one of you gentlemen has a herd of cows, and Mr. A wants to buy one and he goes to Mr. B in your presence and says 'I want to buy that cow,' and Mr. B sells it to him, and A gives his money to B, you standing by and seeing it done, knowing that he is selling your cow and taking that man's money for it, you are not allowed in law afterward to come and say that is your cow, and compel him to lose his money and give you back the cow.    You are estopped, because you stood by and have seen a fraud perpetrated.

"The books define this principle of law in this way.    I have illustrated it to you, but I will now state it to you as the books define it. 'When one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief or to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.'    Now, if Mr. Pease knew that this was a forgery at the time he was notified of the existence of that note at that bank on the 25th day of April, or if he learned it afterward from Mr. Charles, it was his duty to notify the bank of that fact; and if he did not notify the bank of

that fact, and their position was altered and they suffered loss in consequence of his failure to notify them, he is liable for the note.

"There are three grounds, any one of which, if proved in the case, entitles the plaintiffs to recover; and if they do not prove one or the other of the three, the defendant is entitled to your verdict. First, if the defendant signed that note he is liable for it. If it was a forgery by Mr. Charles, and the defendant ratified it afterward, he is liable for it. If it was a forgery by Mr. Charles, and the defendant knew it and neglected to inform the bank and give them all information he had about it, and they, by reason of his neglect to notify them, altered their position or refrained from pursuing Mr. Charles, and lost in consequence of it, he is liable. Any one of those three propositions, if proved, entitles the plaintiffs to your verdict. If none of them is proved, the defendant is entitled to your verdict."

The defendant's exceptions to the charge were as follows:

"(1) To all that part of the charge which refers to the defendant's negligence in not notifying the bank if he knew it was a forgery, allowing them to go on. (Exception is to the substance, not to the language.)

"(2) To the illustration made that the cow matter is applicable to this case as illustrating the principles of estoppel as applied in this case, in that there was no evidence that they could have secured themselves from any means available to Charles in any way.

"(3) To all that part of the charge whereby it is said that it was Pease's duty to notify the bank of what he knew regarding forgery, if he knew anything about it.

"(4) To all that part of the charge which generally treats of the principles of estoppel as applied to this case."

The defendant also excepted to the refusal of the court to give the following instruction: "If Pease honestly believed that the note had been paid, his liability to the bank in all things ceased."

*Sewall W. Abbott,* for the plaintiffs.

*Walter D. H. Hill* and *John B. Nash,* for the defendant.

BINGHAM, J. This is an action of assumpsit upon a promissory note discounted by the plaintiff bank for one Charles, the maker,

and upon which the defendant's name appeared as indorser. The case was submitted to the jury upon three grounds: (1) That they might find the defendant liable if the indorsement was genuine; (2) that they might do so if the indorsement was made without authority, but was subsequently ratified and adopted by the defendant; and (3) that they might find him liable if his conduct worked an estoppel. Exceptions were taken by the defendant to the instructions given the jury and to a refusal to give requested instructions, which present the question whether the defendant was estopped to deny the genuineness of the indorsement by reason of his silent conduct.

It seems that after the plaintiffs discounted the note, their cashier heard that Charles, who was the postmaster at North Conway, had embezzled funds belonging to the government and put in circulation notes with forged signatures. Upon hearing this, the cashier saw the defendant and told him the bank had discounted a note of $500 for Charles with the defendant's indorsement upon it, and asked if it was all right. The defendant replied that he could not tell, as he had signed some notes with Charles. It was then arranged that the bank should send him a copy or abstract of the note, and an abstract was at once sent him. No reply was made to the bank until after a month and a half had elapsed, when the defendant wrote the bank that the indorsement was a forgery and that he was in no way liable on the note. What, if anything, the bank did in the meantime in the way of endeavoring to ascertain the true state of the indorsement does not appear. Upon the question whether the bank could have protected itself had the defendant notified it that the indorsement was a forgery at an earlier date than it was notified, the evidence was conflicting. There was evidence that the defendant was interested with others as a mortgagee of Charles' property, which mortgage had not matured at the time the defendant received the abstract of the note and would not mature as against the national bankruptcy act until about the time the defendant wrote the bank denying his signature. There was also evidence that two or three days after the cashier spoke to the defendant about the indorsement, Charles showed the defendant a cancelled note, which he thought was the note in suit and that Charles had taken care of it. These facts are narrated so that the portions of the charge objected to may be made intelligible and the discussion that is to follow more clearly understood.

The principle of equitable estoppel, or estoppel by misrepresentation, recognized and enforced in cases of this nature, had its origin in equity, but was taken over at quite an early day by courts of law and made adaptable to and applied in legal proceedings (1) to prevent circuity of action, or to obviate the necessity of bringing another proceeding to enforce rights growing out of the same transaction, and (2) to award relief by specific reparation, where specific reparation could equitably be had, and where it could not, to award restitution in money equivalent to the damages sustained,—and all for the promotion of justice and equity. *Horn* v. *Cole*, 51 N. H. 287, 289, 290, 291, 292, 297. Upon proper investigation and analysis it will be found that the elements essential to its existence are: (1) A misrepresentation of a material fact with reference to a subject-matter in which the parties have an interest or are dealing; (2) the existence of a legal duty owed by the party sought to be estopped to the person asserting the estoppel, be that duty one recognized in the law of negligence or of deceit; and (3) a violation of the duty in such a manner that the estoppel asserter could maintain an action for damages against the author of the misrepresentation. If these elements are found to exist, the estoppel denier is precluded from asserting his legal right in the subject-matter out of which, or with reference to which, the duty arose.

The courts, both in this country and in England, in the early cases in which this doctrine is considered and in many of the later ones, would seem at times to have lost sight of the fact that a legal duty, the violation of which could be the basis of an estoppel, could have its origin in the law of negligence as well as in the law of deceit, and to have endeavored to satisfy their confusion by declaring that gross negligence is the equivalent of willful and intentional wrong, thereby rendering "confusion worse confounded." *Stevens* v. *Dennett*, 51 N. H. 324, 335, 336; *Shackett* v. *Bickford*, 74 N. H. 57; *Derry* v. *Peek*, 14 App. Cas. 337. But in process of time it came to be understood that a legal duty recognized in the law of deceit was not the only duty the violation of which might work an estoppel; that the violation of a legal duty recognized in the law of negligence would answer the requirements as well. The duty is imposed, not because the misrepresentation is made with a fraudulent intent, or negligently, but because of the active intervention which may result in another's injury, or because of some relationship of trust and confidence.

It is the legal duty of every man not to willfully injure his neighbor through his active intervention, whether that intervention be by word (*Huskie* v. *Griffin*, 75 N. H. 345; *Stewart* v. *Stearns*, 63 N. H. 99, 105) or deed. *Burrill* v. *Alexander*, 75 N. H. 554; *Cunningham* v. *Company*, 74 N. H. 435, 438. It is likewise his legal duty not to negligently injure his neighbor through his active intervention, whether that be by word (*Edwards* v. *Lamb*, 69 N. H. 599; *Cunningham* v. *Company*, 74 N. H. 435) or deed. *Pittsfield etc. Co.* v. *Shoe Co.*, 71 N. H. 522, 533, 534; *Hubbard* v. *Gould*, 74 N. H. 25, 28; *Dustin* v. *Curtis*, 74 N. H. 266, 268.

This principle, as applied in the law of negligence, has been recently considered in the case of *Hobbs* v. *Company*, 75 N. H. 73; and it is the law of this state that where one voluntarily undertakes to do a thing, whether that be by representation or by positive act, a duty is imposed upon the party making the representation or doing the act of exercising care. It is believed that much of the confusion and difficulty that has arisen in the application of the law of estoppel is due to a failure to recognize the underlying principle in the doctrine of active intervention, and its logical extension and application to cases of negligent misrepresentation; for it seems to be the law of England and of some of our states that an action of negligence cannot be maintained where a person has been damaged through reliance upon the negligent misrepresentation of another. *Low* v. *Bouverie*, [1891] 3 Ch. 105; *The Apollo*, [1891] A. C. 499; 2 Bev. Neg. (2d ed.) 1474, 1475; 14 Harv. Law Rev. 66, 184; Ewart Est. 223–234. A reading of the last citation will also disclose that the failure to recognize and logically apply the principle to cases of negligent misrepresentation has led in some cases to a failure of justice, and in many to the adoption of questionable expedients. If this principle had been kept in mind, and courts had recognized that a misrepresentation, as well as the doing of any other positive act, was active intervention, they would have been relieved from resorting to altruism for the imposition of a legal duty on which to predicate an estoppel in cases involving negligent misrepresentation.

In *Horn* v. *Cole*, 51 N. H. 287, a case of negligent personal misrepresentation, or active intervention, *Perley*, C. J., after a review of the authorities and after demonstrating that a fraudulent intention to misrepresent was not essential, stated the rule of estoppel applicable to the facts of that case as follows (*p.* 300): "Where a man makes a statement disclaiming his title to prop-

erty, in a manner and under circumstances such as he must understand those who heard the statement would believe to be true, and, if they had an interest in the subject, would act on as true, and one, using his own means of knowledge with due diligence, acts on the statement as true, the party who makes the statement cannot show that his representation was false to the injury of the party who believed it to be true and acted on it as such; that he will be liable for the natural consequences of his representation, and cannot be heard to say [the ground of complaint being negligence] that the party actually injured was not the one he meant to deceive." For another case of negligent personal misrepresentation, where the doctrine of estoppel was invoked, see *Richardson* v. *Chickering*, 41 N. H. 380, 383, 386, 387. This was a plain case of active intervention, and the conclusion there reached is undoubtedly correct if it can be said that the misrepresentation was either negligently or fraudulently made. But it would appear from the charge, as given on page 383 of the case, that neither the question of fraudulent intent nor that of negligence was submitted to the jury. The opinion is in certain respects confusing and misleading, as it contains some of the false reasoning so often found in discussions upon this branch of the law.

That the same legal principles are applicable in cases where it is sought to estop one who has actively assisted in lending credence to the misrepresentation of a third person, whether that active assistance or intervention be fraudulently or negligently put into operation, is readily appreciated. And that they have been applied in this state may be seen from an examination of the following cases: *Runlet* v. *Otis*, 2 N. H. 167, 168, 169; *Thompson* v. *Sanborn*, 11 N. H. 201, 205, 206; *Marshall* v. *Pierce*, 12 N. H. 127, 128, 129, 133, 134; *Wells* v. *Pierce*, 27 N. H. 503, 511; *Davis* v. *Handy*, 37 N. H. 65; *Stevens* v. *Dennett*, 51 N. H. 324; *Nixon* v. *Brown*, 57 N. H. 34; *Bramble* v. *Kingsbury*, 39 Ark. 131, 134, 135; Ewart Est. 18, 19, 94, 95.

We now come to those cases which Mr. Ewart classifies under the head of "misrepresentations by passive assistance," where the misrepresentation, if any, consists in silent conduct. See Ewart Est. 88–94. It is apparently the view of the author that silence cannot assume the character of a misrepresentation unless a fraudulent intent is present; that out of silence a legal duty to speak will not arise, there being no relationship of trust and confidence, if there is an absence of bad faith; and that for an imposition of

the duty, we must adopt the altruistic doctrine advanced by him in chapter 5 of his book. From a reading of his text it will be seen that he does not regard fraud as an essential ingredient of estoppel, but rather considers that silence, to become a misrepresentation or an assisted misrepresentation, from the nature of the thing must proceed from or be the result of a fraudulent intent. In the class of cases to which the author refers it will usually appear that the estoppel denier, knowing his right or interest in a given subject-matter and that another interested in the same subject-matter is acting or about to act to his injury in ignorance of that right, (1) remains silent intending the other shall act to his injury in ignorance of the right and in reliance upon the silent conduct, or (2) remains silent, not intentionally or in bad faith, but carelessly not thinking, when he knows or reasonably ought to know that another will act in ignorance of the right and in reliance upon his silence, and be damaged. In such a class of cases is there a legal duty, either in the law of deceit or the law of negligence, resting upon the party remaining silent and which he violates by such conduct? That a duty must be shown to exist and to have been violated before the principle of estoppel can be applied is pointed out in *Allen* v. *Shaw*, 61 N. H. 95, where it is said: "To create an estoppel by silence there must be not only the opportunity, but the apparent duty, to speak."

The subject has been much discussed by courts and text-writers, and it seems to us that the obstacles encountered are due largely to an inability to discern between a question of law and a question of fact, and a failure to keep in mind the principle of active intervention. While it is true that mere silence, standing alone, is a colorless thing from which no conclusion of fact can be drawn and upon which no duty can be predicated, it certainly is not true that no circumstances can exist under which it may become misleading; for it is common knowledge that circumstances frequently arise in which silence becomes as operative and misleading as a positive statement or act could be, and where such is the case a jury would be warranted in finding that the silent conduct had ceased being passive and had become an active misrepresentation. It is also true that in the law of negligence a duty to speak or to become active for another's protection is not imposed on one because of his superior knowledge or condition. For the imposition of such a duty there must be active intervention, or some definite or previously existing fiduciary relation such as exists between trustee

and *cestui que trust*, guardian and ward, master and servant, principal and agent, and copartners, or it must appear that in the particular transaction some trust and confidence was expressly reposed. *Smith* v. *Bank*, 70 N. H. 187; *Story* v. *Railroad*, 70 N. H. 364, 369; *Mallory* v. *Leach*, 35 Vt. 156, 164, 168; 2 Pom. Eq. Jur., *s.* 902.

In *Buch* v. *Company*, 69 N. H. 257, 260, 261, it is said: "Actionable negligence is the neglect of a legal duty. The defendants are not liable unless they owed to the plaintiff a legal duty which they neglected to perform. With purely moral obligations the law does not deal. . . . There is a wide difference—a broad gulf—both in reason and in law, between causing and preventing an injury; between doing by negligence or otherwise a wrong to one's neighbor, and preventing him from injuring himself. . . . The duty to do no wrong is a legal duty. The duty to protect against wrong is, generally speaking and excepting certain intimate relations in the nature of a trust, a moral obligation only, not recognized or enforced by law." That case was decided upon the theory that the fact that the defendants were silent, under circumstances disclosing that they had superior knowledge with relation to the dangers which the plaintiff might encounter while trespassing upon their property, imposed no duty upon them to become active and to protect him from injury. If it can be said that there was evidence tending to prove that the defendants voluntarily took active steps for the protection of the plaintiff, out of which a legal duty would arise to exercise care toward him, that view of the case does not appear to have been advanced by counsel, or to have been considered by the court. The decision plainly proceeds upon the ground that the moving machinery was a condition of the premises, and that there was no evidence from which active intervention could be found as a basis for the imposition of a duty to be careful. But it is not to be inferred from what is there said that circumstances may not exist from which silent conduct may be found to be a representation warranting the imposition of a duty to exercise care. It rather should be said that in that case it was the opinion of the court that there was no evidence from which it could be inferred that the defendants knew, or reasonably ought to have known, that their silent conduct was or would be misleading, or if it was, that the plaintiff relied upon it as an inducement to his pursuing the course he did.

After a careful study of the question, it seems to us that as a positive representation, made under circumstances which one

knows or reasonably ought to know will induce another to act in reliance thereon to his damage, is to be regarded as active intervention imposing a duty to exercise care, so silent conduct, maintained under circumstances disclosing that one knows or reasonably ought to know that it is misleading and will induce another to act in reliance thereon to his damage, may be found to be active intervention and a representation calling for the imposition of a duty to exercise care. It is not the fraudulent intent or the careless conduct that the law recognizes as the basis for imposing the duty, but the silence which in the circumstances of the particular case warrants a finding that it was actively misleading and a positive misrepresentation. The fraudulent intent, or the careless conduct, as the case may be, is material only as establishing a breach of duty, and as determining the character of the reciprocal duty owed by the party injured to the party making the misrepresentation.

It is the duty of every one to use ordinary care to avoid being injured by another's negligence; but no duty to use such care is imposed on one to avoid being injured by another's intentional act or fraudulent misrepresentation. If a misrepresentation is negligently made, or negligently allowed to stand, the party injured by relying upon it must show that he acted as a reasonably prudent man in so doing (*Moore* v. *Bowman*, 47 N. H. 494; *Odlin* v. *Gove*, 41 N. H. 465); while if the misrepresentation is made with a fraudulent intent, it is only necessary for the party defrauded to show that in relying upon the representation he honestly believed it to have been true. The question of his knowledge, or equal means of knowledge, of the truth of the facts included in the representation is material only as showing whether he in fact relied upon the representation and whether his belief was honestly entertained. *Cunningham* v. *Company*, 74 N. H. 435; *Stewart* v. *Stearns*, 63 N. H. 99, 106.

If we examine the cases in deceit it will be found that silent conduct under certain circumstances may be found to be a positive representation from which a legal duty will arise to cease misleading. In *Stewart* v. *Ranche Co.*, 128 U. S. 383, 388, it is said: "The gist of the action [of deceit] is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowl-

edge or reach of the plaintiff." In that case and the early one of
*Laidlaw* v. *Organ*, 2 Wheat. 178, it was held that silent conduct
under the circumstances there disclosed could be found to be mis-
leading and a false representation as to which a legal duty would
be imposed.

In *Jordan* v. *Pickett*, 78 Ala. 331, 338, it was held that a conceal-
ment may be tantamount to a misrepresentation and equally
effective to mislead, but to be so it must operate as an inducement
to the contract or change of position, and to be fraudulent must
have been with an intention to mislead. In that case the seller
had not only superior knowledge and means of knowledge, but
the facts suppressed concerned a subject-matter in which both
had an interest, and its suppression afforded a material inducement
to making the purchase and changing the position of the purchaser
to his damage.

In *Hanson* v. *Edgerly*, 29 N. H. 343, which was an action for
deceit in the sale of a horse that was diseased, it appeared that
the fact concealed, or which the vendor omitted to disclose, was
well known to the defendant (the vendor), but not known to the
plaintiff (the purchaser), who had not equal means of knowledge.
There was a verdict for the defendant, subject to the plaintiff's
exception. The jury were instructed, in substance, that in order
to find for the plaintiff they must be satisfied that representations
of a material character were falsely made by the defendant, or
facts of a material character were concealed by him, with the
intention and for the purpose of deceiving the plaintiff, and that
the plaintiff in reliance thereon was thereby deceived. And it
was held that the instruction to the jury as to the concealment
of, or omission to disclose, the diseased condition of the horse,
to wit, that it must have been "with the intent and for the purpose
of misleading and deceiving" the plaintiff, was sufficiently favor-
able to him; that a duty to speak does not arise out of silence,
so as to charge a person in deceit, unless the omission to speak is
with the purpose and design of misleading and deceiving, nor
unless the facts which the party failed to disclose were known to
him and unknown to the other party who had not equal means
of knowledge, nor unless they were material—that is, were facts
pertaining to the subject-matter of the sale and in which the parties
had an interest, and operated as an inducement to his making the
purchase.

That the cases in this state involving an application of the doc-

trine of an equitable estoppel based on silent conduct may be readily understood when considered in the light of what has here been said, will be seen from a brief review of them.

In *Allen* v. *Shaw*, 61 N. H. 95, if the original bill had contained allegations to the effect that the plaintiffs delivered the materials to Abbott in reliance upon the defendants' silence, and that the defendants knew or reasonably ought to have known the plaintiffs were acting in reliance upon their silent conduct and otherwise than they would have done had they known the facts, the demurrer to the bill would have been overruled.    Under such circumstances, the defendants' silent conduct could have been found to have become an active misrepresentation warranting the imposition of a duty to exercise care and to disclose their title.

In *Odlin* v. *Gove*, 41 N. H. 465, the reasoning of the opinion is more or less misleading, as gross negligence is treated as the legal equivalent of actual bad faith; and the idea is indulged that the doctrine of equitable estoppel is of a highly penal character in its application, and would justly be regarded ·as "odious" unless actual bad faith or gross negligence were shown.    But when these views are eliminated, it is not difficult to see that the case was really treated as one of negligent misrepresentation.    All it decided was (1) that the trial court was justified in refusing to rule as matter of law that the plaintiff was estopped; that it was for the jury to say upon the evidence whether the plaintiff's silence was misleading—a positive misrepresentation involving a duty to exercise care; if they so found, (2) that it would be the plaintiff's duty to notify the defendant that he was erecting his building on the plaintiff's land within a reasonable time after he learned where the line was; (3) that it was the defendant's duty to exercise due care to ascertain where the true line was to entitle him to rely upon the plaintiff's conduct; and (4) that if he erected his building partly on the plaintiff's land in consequence of his failure in this regard, the plaintiff would not be estopped to assert his title.

In *Stevens* v. *Dennett*, 51 N. H. 324, the evidence disclosed active intervention on the part of the plaintiff in aid of the misrepresentation of a third person, in that he signed as a witness the deed conveying to the defendant the land to which the · property in question had become attached as fixtures.    It was therefore unnecessary in deciding the case to consider whether the plaintiff's silent conduct could under the circumstances, and apart from his act of signing the deed, be found to be misleading and a misrepre-

sentation involving a duty to exercise care. The jury found specially that the plaintiff's failure to disclose to the defendant his claim to the fixtures was due to gross negligence, but not to bad faith. While the court treated the case as one of negligent misrepresentation, it seems to have taken refuge in the now discarded notion that "gross negligence is the equivalent of willful and intentional concealment," notwithstanding the jury had found an absence of bad faith. It is unnecessary to further consider this line of reasoning, in view of what has been said in *Shackett* v. *Bickford*, 74 N. H. 57, and the English cases there cited.

Is the law of equitable estoppel of a highly penal character in its application, as suggested in *Odlin* v. *Gove?* Doubtless many cases can be found where the sum awarded or the relief granted would seem to be highly penal. Some of these cases, as far as the question of relief is concerned, are to be sustained on the ground that the facts in the particular case authorized the award under the legal principles of ratification or adoption, and not of estoppel; and in the balance of the cases the penal character of the relief awarded is to be regarded as due to oversight or a failure to recognize the fundamental principles distinguishing equitable from legal estoppel. To illustrate: If I ratify or adopt my signature which has been placed upon a note without my authority, I become a party to the contract and am holden for the full amount of the note; but this is because by ratifying and adopting the transaction I have agreed to be holden as a party to the note. *Forsyth* v. *Day*, 46 Me. 176, 194. On the other hand, if my signature is a forgery and I have not adopted it, but have so conducted myself as to be estopped to deny the genuineness of the signature, the amount of the note should not be taken to be the measure of the plaintiff's right of recovery, unless it can be shown that he has been damaged to that extent in reliance upon my negligent or willful misrepresentation. To allow a recovery of the greater sum, in such case, would be not only to shut out the truth, but also the justice and equity of the particular case, which, as will be hereafter shown, is the rule of legal but not of equitable estoppel, which we are here considering. *Horn* v. *Cole*, 51 N. H. 287, 290, 291; *Bramble* v. *Kingsbury*, 39 Ark. 131, 134.

The principle of assent which lies at the foundation of the law of contracts, and of ratification and adoption, plays no part in the law of equitable estoppel. There the relief granted or the damages awarded are not based upon a breach of contract, but upon the

equitable principle of restitution which charges one, even though he expressly dissents, by ordering him to make restitution, either by releasing his legal or equitable right in the specific thing with reference to which the damage arose, if that can equitably be done, or by awarding such a sum of money as justice and equity requires to reimburse the party damaged. It is analogous to the equitable principle applied in the law of *quasi*-contracts, to the existence of which assent is not necessary, and where restitution is ordered, based upon the amount which the defendant has unjustly enriched himself at the plaintiff's expense. Keener *Quasi*-Cont. 5.

The distinction between ratification and adoption, and equitable estoppel, is pointed out in *Forsyth* v. *Day*, 46 Me. 176, 194, 195, 196. It is there said: "The distinction between a contract intentionally assented to, or ratified in fact, and an estoppel to deny the validity of the contract, is very wide. In the former case the party is bound because he intended to be; in the latter, he is bound notwithstanding there was no such intention, because the other party will be prejudiced and defrauded by his conduct unless the law treat him as legally bound. In the one case, the party is bound because this contract contains the necessary ingredients to bind him, including a consideration. In the other, he is not bound for these reasons, but because he has permitted the other party to act to his prejudice under such circumstances that he must have known, or be presumed to have known, that such party was acting on the faith of his conduct and acts being what they purported to be, without apprising him to the contrary." See, also, *Greenfield Bank* v. *Crafts*, 4 Allen 447, 454, 455; *Wellington* v. *Jackson*, 141 Mass. 157, 159; *Traders Bank* v. *Rogers*, 167 Mass. 315, 321.

The best exposition of the origin and nature of equitable estoppel, as distinguished from legal estoppel, which we have seen is to be found in *Horn* v. *Cole*, 51 N. H. 287, 289. It is there said: "The ground on which a party is precluded from proving that his representations on which another has acted were false is that to permit it would be contrary to equity and good conscience. This has been sometimes called an *equitable estoppel*, because the jurisdiction of enforcing this equity belonged originally and peculiarly to courts of equity, and does not appear to have been familiarly exercised at law until within a comparatively recent date. . . . The doctrine, however, is a very old head of equity, and is recognized and applied in a great number of the early cases. . . . Many of these cases related to underhand agreements in fraud of marriage

settlements; but this principle is of general application. . . . Relief was given according to the circumstances of the case—sometimes by enjoining suits at law in which the legal title was set up, and sometimes by decreeing conveyances and the cancellation of deeds and other instruments; but in all these cases relief was given in equity contrary to the strict legal rights of the defendants." After further expanding this idea and illustrating the application of the doctrine, the learned judge proceeds to state the distinction between legal and equitable estoppel. He says: "It would have a tendency to mislead us in the present inquiry, as there is reason to suspect that it has sometimes misled others, if we should confound this doctrine of equity with the *legal estoppel by matter in pais.* The equitable estoppel and legal estoppel agree indeed in this, that they both preclude from showing the truth in the individual case. The grounds, however, on which they do it are not only different, but directly opposite. The legal estoppel shuts out the truth, and also the equity and justice of the individual case, on account of the supposed paramount importance of rigorously enforcing a certain and unvarying maxim of the law. For reasons of general policy, a record is held to impart incontrovertible verity, and for the same reason a party is not permitted to contradict his solemn admission by deed. And the same is true of legal estoppels by *matter in pais.* Certain acts done out of court and without deed were, by a technical and unyielding rule of law, upheld on like grounds of public policy and followed always by certain legal consequences. The legal effect of such acts was not permitted to be controverted by proof" (*pp.* 290–291). After stating that legal estoppels by *matter in pais* were few in number, and pointing out in what they consist (*p.* 291), he says: "All legal estoppels, whether by record, by deed, or by *matter in pais,* depended on strict legal rules, and shut out . . . evidence of the truth and the equity of the particular case to support a strict rule of law, on grounds of public policy. Equitable estoppels are admitted on the exactly opposite ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth" (*p.* 291). "The principle involved is the same, whether the question is raised in a suit to recover damages for the false representation, or redress is sought by estopping the party to prove the falsehood of the representation.

Both cases go on the same general ground, that the party is responsible for the consequences of his false representation" (*p.* 297).

The decision in *Fall River Bank* v. *Buffinton*, 97 Mass. 498, cannot stand on the principles of equitable estoppel as understood and applied in this state, but is to be supported, if at all, on the doctrine of ratification and adoption; for in that case, although the defendant's name as indorser was forged upon the notes, it appeared that before they became due, but after they were discounted by the plaintiffs, they were shown to the defendant, who said the signatures were genuine. Having thus adopted the signatures and become a party to the notes, there is no reason why he should not be charged, like any indorser, for the full amount of the notes. But to charge him on the theory of estoppel for the full amount, when the only damage shown to have been sustained by virtue of the defendant's misrepresentation is the loss of a possible dividend of five per cent out of the forger's insolvent estate, does not seem warranted by the demands of justice and equity. Again, the opinion assumes that the action proceeds as upon promissory notes. It is true the action is brought upon the notes, but it proceeds, not upon the contracts, but upon the plaintiffs' equitable right as against the defendant in the notes, which was created by the defendant's misrepresentation. If the notes had been taken as collateral security for a loan to the forger of a less amount, and suit had been brought by the plaintiffs upon the notes for the purpose of realizing on the security, the action would be upon the notes; and if the reasoning of the Massachusetts court is correct, the defendant would be estopped to deny that he was a party to the notes, and the plaintiffs would recover the full amount. But in such case the plaintiff is not allowed to do so. *In re Romford Canal Co.*, 24 Ch. Div. 85, 92, 93; Ewart Est. 194. The reason is that they did not loan the money to the forger in reliance upon the defendant's misrepresentation, for the loan was made before the misrepresentation took place; and justice and equity do not require that they should recover a greater sum than the loss they sustained because of the defendant's misrepresentation. On the other hand, had the misrepresentation preceded the loan justice and equity would require that the plaintiffs should recover the amount of the loan if that was the loss occasioned by the misrepresentation, as would usually be the case. In the case of *In re Romford Canal Co.*, *supra*, in which this phase of the situation was presented, it was said that the plaintiff's rights "being only

equitable, relief must be given to them on equitable terms"; and the plaintiffs were not allowed to recover the amount of the note, but the amount of the loan, which in that case the evidence disclosed was the loss occasioned by the misrepresentation.

We are aware that a contrary view has been expressed in England in the case of *Ogilvie* v. *Agency Corp.*, [1896] A. C. 259, 270, and that the supreme court of Canada, regarding itself bound by the *dictum* of the English court, has held, by a majority of three to two, that the measure of recovery should be the sum due on the notes, although the damages occasioned by the defendant's misrepresentation were not shown to be of that amount. *Ewing* v *Bank*, 35 Can. S. C. Rep. 133; *Dominion Bank* v. *Ewing*, 7 Ont. L. R. 90. See, also, the apparently conflicting views expressed by the court of appeals in New York in *Payne* v. *Burnham*, 62 N. Y. 69, and in *Grissler* v. *Powers*, 81 N. Y. 57.

Although it may be doubtful whether the question of the amount of recovery is raised by the defendant's exceptions to the charge, it has nevertheless been considered for the reason that we are of the opinion that the instructions to the jury were erroneous and the case must be sent back for trial. It is unnecessary to analyze the charge. Its defects will be readily appreciated from what has already been said. The instructions should have included the following propositions:

(1) If the defendant knew his signature was a forgery, and knew, or as a reasonable man should have known, that the plaintiffs had an interest in the note and were relying upon his silent conduct as confirmatory of the genuineness of the signature, and as they would not have done had they known the truth, the jury might find that the defendant's conduct was under the circumstances a misrepresentation imposing a duty upon him to refrain from negligently or willfully making or continuing the misrepresentation.

(2) If the jury found the representation was negligently made or allowed to stand, and the plaintiffs were damaged in relying upon it, the plaintiffs to establish an estoppel must show that they were free from fault in relying upon it.

(3) If the jury found the representation was willfully made or persisted in with the intention that the plaintiffs should rely upon it, and the plaintiffs were damaged in relying upon it, to establish an estoppel and a right to recover the plaintiffs must further show that they relied upon it in the honest belief that it was true.

(4) If the jury found for the plaintiffs upon either of these

grounds, they could award them such a sum as the evidence showed they had been damaged by relying upon the defendant's misrepresentation, which might be equal to or less than the face of the note, as the evidence warranted.

*Exceptions sustained: verdict set aside.*

PARSONS, C. J., was in doubt: YOUNG, J., dissented: the others concurred.