NEVADA NATIONAL BANK, Appellant, v. GOLD STAR MEAT COMPANY, INC., Respondent.

No. 6922

October 9, 1973                    514 P.2d 651

*Guild, Hagen & Clark, Ltd.,* of Reno, for Appellant.

*John Sanchez,* of Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

During the latter part of December, 1969, Verner Aversch, the president of the respondent company, telephoned the appellant, Nevada National Bank, inquiring about the credit status of a potential customer, Holiday Ranch Beef, Inc. Aversch's phone call was transferred to Dale Hastings, a long time employee who was the assistant vice-president and manager of the South Reno branch of the appellant bank. During their conversation, Hastings represented to Aversch that it would be safe to extend $6,000–$8,000 credit to Holiday Ranch Beef, indicating that "we were going along with them

and hoping that they would do a good business and be a credit to the community." However, as of late December, 1969, Holiday Ranch Beef did not in fact have an account with appellant, though its parent corporation, Holiday Airlines, Inc., was a depositor.

After receipt of the credit information, Aversch contacted his bank, Guarantee Bank and Trust, Denver, Colorado, which made a similar telephonic inquiry and was given essentially the same credit information. Relying on this information, Gold Star delivered two shipments of beef products valued at $3,028.59 to Holiday Ranch Beef. Payment was made in that amount with a postdated check delivered after the second shipment had been delivered.

On February 5, 1970, respondent's Colorado bank tendered the check for payment and it was returned marked insufficient funds. On February 16, 1970, the check was resubmitted at the direction of Hastings, and again returned for the same reason. Thereafter, on June 2, 1971, respondent commenced suit alleging that the appellant bank was liable for the amount of the check because of Hastings' representations. On February 15, 1972, judgment was entered against Nevada National Bank in the amount of $3,028.59, plus attorney fees of $750.00. It is from that judgment that this appeal is taken.

Hastings, as an officer of the appellant bank, was acting within the scope of his apparent authority when he represented to Aversch that it was safe to extend $6,000–$8,000 in credit. "Apparent authority" arises when a principal holds his agent out as possessing certain authority or permits him to exercise or to represent himself as possessing such authority under circumstances that would estop the principal from denying its existence. Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072 (1951). It was appellant who placed Hastings in a position of authority from which he made a statement concerning the credit status of a prospective depositor. Merchant's Bank v. State Bank, 77 U.S. (10 Wall.) 604, 644 (1870); Dougherty v. Wells, Fargo & Co., 7 Nev. 368 (1872). A principal is bound by acts of its agent while acting in the course of his employment, Prell Hotel Corp. v. Antonacci, 86 Nev. 390, 392, 469 P.2d 399, 400 (1970), and a principal is liable for those acts within the scope of the agent's authority. The Yellow Jacket Silver Mining Company v. Stevenson, 5 Nev. 224 (1869); Ellis v. The Central Pacific Railroad Company of California, 5 Nev. 255, 256 (1869); Lonkey v. Succor

M & M Co., 10 Nev. 17, 19 (1874); Wright v. Carson Water Co., 23 Nev. 39, 42, 42 P. 196, 197 (1895).

Where the action of the employee is clearly an independent venture and not committed within the course of the very task assigned to him, the employer is not liable. Chapman v. City of Reno, 85 Nev. 365, 455 P.2d 618 (1969); J. C. Penney Co. v. Gravelle, 62 Nev. 434, 44 P.2d 487 (1945). Hastings' actions were not independent but were within the scope of ostensible authority that is generally associated with the position of bank officer.

Hastings when confronted with the request for credit information was not obligated to divulge such information. He could have requested written authorization for such a disclosure with attendant releases and disclaimers, or he could have provided Aversch with an accurate factual statement, thus shifting to Gold Star the burden of determining the financial status of Holiday Ranch Beef. Instead, Hastings represented that it was safe to extend credit up to $8,000 with the knowledge that Holiday Ranch Beef was not in fact a depositor in his bank and that he had no accurate means of assessing the credit status of Holiday Ranch Beef.

Where one responds to an inquiry, it is his duty to impart correct information. Copper Process Co. v. Chicago Bonding & Ins. Co., 262 F. 66 (3rd Cir. 1920); American Bonding Co. v. Fourth Nat. Bank, 91 So. 480 (Ala. 1921); Roper et al. v. Sangamon Lodge No. 6, 91 Ill. 518 (1879); Hays v. Meyers, 107 S.W. 287 (Ky. 1908); Hutsell v. Citizens Nat. Bank, 64 S.W.2d 188 (Tenn. 1933); Baker v. Seahorn, 1 Swan 54, 55 (Tenn. 1851); Feist v. Roesler, 86 S.W.2d 787 (Tex.Civ.App. 1935). Moreover, where a bank office through its officer undertakes to give advice, even gratuitously, that officer is bound to use the skill and expertise which he has or which he could be presumed to have. When that officer negligently or carelessly attempts to discharge that duty by misrepresenting facts within his knowledge, the bank should be held responsible for those misrepresentations.

Hastings was originally under no duty to divulge any information, but once having voluntarily ventured on such a course of action, he was thenceforth required to exercise due care. Conway Nat. Bank v. Pease, 82 A. 1068, 1071 (N.H. 1912);

Hobbs v. George W. Blanchard & Sons Co., 70 A. 1082 (N.H. 1903); W. Prosser, Law of Torts § 54 at 339 (3rd ed. 1969). Having assumed this duty Hastings breached it by failing to state accurately and with full candor the posture of Holiday Airlines, Inc., and the absence of any bank account at the time of Aversch's phone call in December, 1969.

On the basis of Hastings' statement, two shipments of beef products totalling $3,028.59, were sent to Holiday Ranch Beef. Where a misrepresentation is negligently made, or negligently allowed to stand, the party injured in relying upon it must show that he acted as a reasonably prudent person in so doing. Conway Nat. Bank v. Pease, supra, at 1073.

Here it was foreseeable that after a specific inquiry about the credit of a potential customer and a favorable disclosure by the appellant that an ordinary, prudent person would extend credit based on that favorable information. The position of an agent such as Hastings facilitates the reliance of third persons to whom such information appears accurate and to whom such agent appears to be acting in the ordinary course of the business entrusted to him. In Warshauer v. Bauer Construction Co., 3 Cal.Rptr., 570, 573 (Cal.App. 1960), that court said: "The courts have consistently held that the principal is responsible to third parties for the misconduct of an agent committed within the scope of his authority even though the principal is completely innocent and has received no benefit from the transaction. . . ," citing Wells Fargo Bank & Union Trust Co. v. Dowd, 294 P.2d 159 (Cal.App. 1956); Rutherford v. Rideout Bank, 80 P.2d 978 (Cal. 1938); Restatement of Agency § 261. See also Merchant's Bank v. State Bank, supra, at 644, Dougherty v. Wells Fargo & Co., supra; 2A C.J.S. Agency § 157 at p. 785.

The district court committed no error in holding Nevada National Bank liable for the negligent acts of its agent, based on Hastings' material misrepresentations.

Affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.